**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Inair Isela CODD, Defendant–Appellee.**

No. 91–3164.

United States Court of Appeals,
Eleventh Circuit.

March 31, 1992.

Richard A. Friedman, Criminal Div., Appellate Section, U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellant.

James P. Judkins, Tallahassee, Fla., for defendant-appellee.

Before HATCHETT and DUBINA, Circuit Judges, and GODBOLD, Senior Circuit Judge.

HATCHETT, Circuit Judge:

In this criminal case, we affirm the district court's suppression of evidence law enforcement officers seized during an unconstitutional period of detention.

## FACTS

At approximately 5:55 p.m. on November 2, 1990, Federal Correctional Institution (FCI) officials in Tallahassee, Florida, discovered that inmate Richard Codd had escaped. Prison officials notified Deputy United States Marshall Randy Frazey of the escape. Frazey went to the prison to investigate Richard Codd's escape. From a review of Codd's prison records, Frazey found that Codd had a sister in West Palm Beach, and brothers in Lubbock, Texas, and New Orleans, Louisiana. Later that evening, Frazey telephoned Deputy United States Marshal Bezamson in West Palm Beach, Florida, and asked him to investigate whether Codd's sister had any information concerning his escape. Frazey also sent out advisories to Lubbock and New Orleans so that marshals could interview Codd's brothers.

On Saturday, November 3, authorities discovered that a Mrs. Smith, the wife of an inmate at FCI, had information concerning Inair Codd, the appellant in this case. Smith informed Frazey that she met the appellant on Wednesday, October 31, on a flight from Belize, Central America, to the United States. The women began talking on the plane and learned that both were traveling to America for the same purpose—to visit their husbands at FCI in Tallahassee. The appellant offered to give Smith a ride to Tallahassee and rented a red Toyota at the airport in West Palm Beach. Later that evening, the two women arrived in Tallahassee and checked into a motel. The next day, Thursday, November 1, both women went to FCI to visit their husbands. The following morning, the day of the escape, the appellant and Smith separated at approximately 9:30 a.m. The appellant did not visit Richard Codd on November 2. Further, the appellant did not make any statements concerning her husband's escape.

Upon receiving this information, Frazey telephoned Bezamson in West Palm Beach and asked him to investigate the appellant's car rental at the Palm Beach Airport. Bezamson ultimately discovered that the appellant rented a car from the Dollar Rent–A–Car Agency at the airport. Bezamson proceeded to the Palm Beach International Airport and interviewed the manager of the Dollar Rent–A–Car Agency. The manager provided Bezamson with a copy of the rental agreement appellant had signed. According to the agreement, the appellant would return the car to the same rental office in approximately one week. Bezamson went back to the marshal's office in West Palm Beach. Within minutes after Bezamson arrived at the marshal's office, the manager at the Dollar Rent–A–Car called and stated that the appellant was at the Hobby Airport in Houston, Texas, attempting to return the rental car. The manager noted that while nothing in the rental car agreement prevented the car's return in Houston, a penalty payment would be assessed. Bezamson asked the Dollar Rent–A–Car manager to tell the car rental agent in Houston to try to stall the appellant. The time was approximately 1:00 p.m. EST (12:00 p.m. CST).

Bezamson then telephoned the Hobby Airport Police and asked them to go to the Dollar Rent–A–Car Agency and detain the appellant, because the marshals wanted to talk to her concerning her husband's escape. Bezamson also shared with the Hobby Police all the information they had regarding the appellant. During this time, the marshal's office in Houston was contacted and instructed to send a marshal to the Hobby Airport to interview the appellant.

At approximately 1:00 p.m. CST, the first law enforcement officer arrived at the Dollar Rent–A–Car Agency in Houston. Airport police officer Leshay Phillips received the name of the appellant and her physical description from a dispatcher. Officer Phillips observed a woman matching the appellant's description walking away from the rental car area. Two other police cars responded to the dispatch to the Dollar Rent–A–Car Agency. Officer Phillips asked the appellant to stop and identify herself. When asked about the whereabouts of her husband, the appellant refused to answer. Officer Phillips characterized the appellant's behavior as anxious, and stated that from that point on, the appellant was not free to leave.

Officer Phillips confirmed through dispatch the appropriate course of action. Prior to leaving the airport, a Dollar Rent–A–Car employee went outside to tell the officers that a man called several times asking about the woman who returned the red Toyota. When the appellant overheard this conversation, she became upset. The officers then handcuffed the appellant and took her to the Hobby Airport Police Department.

Upon arrival at the police department, the officer handcuffed the appellant to a chair in the roll-call room. While waiting for a deputy marshal to arrive, Officer Phillips searched the appellant's purse and found *inside* the appellant's wallet: Richard Codd's FCI Tallahassee inmate card; a social security card in the name of Richard Codd; and a return airline ticket from Florida to Belize.

At approximately 2:00 p.m. CST, Deputy United States Marshal West from the Houston marshal's office arrived at the airport police department. He spoke briefly to the appellant and then telephoned Bezamson in West Palm Beach. West did not speak with Officer Phillips at that time. Bezamson instructed West to arrest the appellant. West released the handcuffs and read the appellant *Miranda* rights. West did not, however, formally arrest the appellant. At approximately 2:30 p.m. CST, West's supervisor, Deputy United States Marshal Cestero, formally placed the appellant under arrest. From the time that marshals were notified by the Dollar Rent–A–Car Agency that the appellant was in Houston at 1:00 p.m. EST to the time she was arrested at 2:30 p.m. CST, two and one-half hours elapsed. Before the appellant's arrest, West obtained the items taken from the purse.

## PROCEDURAL HISTORY

On November 13, 1990, a grand jury indicted the appellant and Richard Codd with conspiracy to effect his escape from a federal correctional institution, in violation of 18 U.S.C. § 371 (Count I). The grand jury separately charged Richard Codd with escape (Count II) and the appellant with aiding in the escape (Count III).

Subsequently, the appellant moved to suppress the contents of her purse and statements made to officers prior to her formal arrest. At the hearing on the motion to suppress in the district court, the government argued:

> the Government is not contending that at the time of the investigative detention that there was probable cause. We are nevertheless, contending that the investigative detention, that is the detention of Mrs. Codd initially by Officer Phillips of the Houston Police Department until the time that she was placed under arrest by Deputy U.S. Marshal Rey Cestero, was valid under the United States Constitution. . . .

The district court granted the appellant's motion to suppress. Although the court found that the stop and the interrogation of the appellant were lawful, it held that a two to two and one-half hour *Terry*-type detention, even under exigent circumstances, was too long and therefore, unconstitutional. *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The government appeals the district court's ruling.

## DISCUSSION

On appeal, the government contends that probable cause to arrest the appellant existed prior to her being taken to the Hobby Airport Police Department. Thus, the government argues that the appellant was lawfully detained and the search of her purse was lawful because it was incidental to her arrest. Because the government did not urge the district court to uphold the search on probable cause grounds, we will not consider that argument.

In the alternative, the government urges an interpretation of the time from the initial stop of the appellant to the time Officer Phillips found out about the unidentified male caller as a *Terry*-type detention. The government asserts that since the *Terry*-type detention was not intrusive, and Officer Phillips received information concerning the unidentified male caller shortly after the initial stop of the appellant, probable cause arose for the appellant's "de facto" arrest. Hence, searching the appellant's purse was justifiable as a search incident to arrest. *See United States v. Edwards*, 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974).

The appellant contends that her detention went far beyond the bounds of a *Terry*-type stop. She states that she was seized, handcuffed and held for two and one-half hours during which she was not free to leave and her purse was illegally searched. She further asserts that while the police may have suspected criminal activity, they performed an impermissible search to confirm their suspicions. *See Florida v. Royer*, 460 U.S. 491, 499, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983). We agree.

This case can be analogized to *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). In *Dunaway*, the police questioned a defendant at the police department. During the questioning, the defendant was not free to leave. The government in *Dunaway* claimed that detention of the defendant was based on a reasonable suspicion that he had information about an unsolved crime. In upholding the suppression of the statements and evidence, the Supreme Court found that the defendant had been illegally detained without the requisite probable cause.

When focusing on the scope and duration of the appellant's detention, as the Supreme Court did in *Terry*, *Royer*, and *Dunaway*, it is clear that the detention in this case went far beyond the boundaries of *Terry*.

Accordingly, the ruling of the district court is affirmed.

AFFIRMED.