**Luis OLIVEIRA, Milton Oliveira and Elias Moreiro, Plaintiffs–Appellees,**

v.

**George MAYER, Chief, Stamford Police Department, Gregory Tomlin, Captain, Stamford Police Dept., John Rainone, Officer, Stamford Police Dept., John F. Scalise, Officer, Stamford Police Dept., Laurie Bretthauer, Officer, Stamford Police Dept., Sean Cooney, Officer, Stamford Police Dept., Douglas Robinson, Officer, Stamford Police Dept., Defendants–Appellants,**

**Kristal Walkley, Sergeant, Stamford Police Dept., Defendant.**

No. 1013, Docket 93–7813.

United States Court of Appeals, Second Circuit.

Argued Feb. 18, 1994.

Decided April 28, 1994.

James V. Minor, Asst. Corp. Counsel, Stamford, Conn. (Daniel M. McCabe, Corp. Counsel, Stamford, CT, on the brief), for defendants-appellants.

Philip Russell, Greenwich, CT (Roy S. Ward, Russell & Wells, Greenwich, CT, on the brief), for plaintiffs-appellees.

Before: NEWMAN, Chief Judge, CARDAMONE and MAHONEY, Circuit Judges.

JON O. NEWMAN, Chief Judge:

This appeal primarily concerns the interplay, in the context of a jury trial, between the Fourth Amendment standards for making arrests and stops and the standard for allowing the defense of qualified immunity. Seven police officers for the City of Stamford, Connecticut, appeal from a judgment entered July 7, 1993, by the United States District Court for the District of Connecticut (T.F. Gilroy Daly, Judge) awarding plaintiffs Luis Oliveira, Milton Oliveira, and Elias Moreiro, $60,000 in compensatory damages and $15,000 in punitive damages. We hold that it was appropriate for the District Court to rule as a matter of law that the defendants' actions violated the plaintiffs' rights under the Fourth Amendment. However, the District Court erred when it then directed a verdict rejecting the officers' defense of qualified immunity, as this issue should have been submitted to the jury. We therefore vacate the judgment for the plaintiffs and remand for a trial on the defendants' qualified immunity defense.

## Background

On January 4, 1991, a private motorist spotted the plaintiffs, three dark-skinned males, handling an expensive video camera while driving in a·dilapidated station wagon through an affluent area of North Stamford, Connecticut. Suspicious merely because the camera appeared quite valuable and because the vehicle had New York license plates and had emerged from a dead-end street, the motorist called the police from his car phone and reported that there may have been a burglary.

The Stamford Police Department dispatched many officers in response to the motorist's report. They quickly located what they correctly believed was the station wagon the motorist had reported, and six police cruisers formed a wedge around the plaintiffs' vehicle near a breakdown lane on Interstate 95. The police officers then followed "high-risk" or "felony" stop procedures. By loud-speaker, the plaintiffs were ordered to stop their vehicle, toss out the keys, and keep their hands outside the windows. With guns drawn, the police ordered the driver, Luis Oliveira, to leave the car, keep his hands above his head, and walk backwards toward them. Luis was then ordered to kneel, was handcuffed, was searched while spread over the hood of a car, and was placed into the rear of one of the police cruisers. The other two plaintiffs were similarly removed from the station wagon, handcuffed, searched, and segregated. Though the plaintiffs were at times slow to respond to the police officers' commands due to their limited mastery of English, they followed the officers' orders without resistance.

After thoroughly searching the defendants, the police also searched the entire interior of the station wagon and the contents of a shoulder bag found in the vehicle. Each plaintiff was separately questioned and at least one was read *Miranda* rights. While questioned, the plaintiffs stated they had been working as masons in North Stamford, but they could not provide an exact location or identify their employer. Luis Oliveira provided the police with a phone number, which was called, but the person that answered did not speak English. About 30 minutes after the plaintiffs were stopped, other officers completed a canvass of the neighborhood where the plaintiffs had initially been spotted and found no signs of a burglary, at which point the plaintiffs were released.

The plaintiffs thereafter initiated the instant suit under 42 U.S.C. § 1983 (1988) against all the police officers who were on the scene when the plaintiffs were detained. In the course of a jury trial, the participants in the incident testified concerning the details of the plaintiffs' detention, and each side presented expert testimony concerning police procedures. After the plaintiffs had presented their case, the District Court denied the defendants' motion for a directed verdict. At the close of all the evidence, the District

Court granted the plaintiffs' motion for a verdict on the issue of liability. The Court ruled as a matter of law that the plaintiffs had been subjected to an arrest and that the defendants did not have probable cause for the arrest. The Court further ruled as a matter of law that the police officers were not entitled to qualified immunity because no reasonable officer could have believed that the defendants' actions were lawful. The jury was thus charged only as to damages, and it awarded each plaintiff $20,000 in compensatory damages generally and $5,000 in punitive damages from Captain Gregory Tomlin. The District Court entered judgment for the aggregate amount of $75,000 and subsequently rejected the defendants' motions for judgment n.o.v. or a new trial.

### Discussion

I. Lawfulness of the Detention of Plaintiffs

A. *Arrest or* Terry *Stop?* The District Court ruled as a matter of law that the plaintiffs had been arrested. The Court explained:

> [S]ix police officers in six vehicles (1) drew their weapons on three plaintiffs with no reasonable basis to assume they were armed other than the nature of the possible crime committed, (2) required them to kneel or lie down after ordering them out of the car, (3) kept the plaintiffs in handcuffs even after they were patted down and placed in separate squad cars, (4) searched the wallet of one plaintiff, (5) informed that plaintiff of his *Miranda* rights and interrogated him in the back of the squad car, and (6) searched the vehicle far beyond the scope permitted under *Terry [v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)].... [T]he Court finds that no reasonable juror could find other than that plaintiffs were arrested.

The defendants do not dispute the facts upon which the District Court relied to rule as a matter of law that the plaintiffs had been arrested. Rather, the police officers contend generally that they acted reasonably under the circumstances, and they claim that they detained the plaintiffs no longer and treated the plaintiffs no harsher than necessary to dispel the suspicions raised by the motorist's

report. The defendants seem to suggest that their detention of the plaintiffs was not an arrest but a permissible *Terry* stop, *see Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), supportable on the basis of the police officers' reasonable suspicions.

In *United States v. Perea,* 986 F.2d 633 (2d Cir.1993), this Court recently elaborated the factors central to determining whether an encounter between the police and a suspect is an arrest or merely a *Terry* stop. Specifically, we explained that the pertinent considerations include

> the amount of force used by police, the need for such force, and the extent to which the individual's freedom of movement was restrained, ... and in particular such factors as the number of agents involved ...; whether the target of the stop was suspected of being armed ...; the duration of the stop ...; and the physical treatment of the suspect ..., including whether or not handcuffs were used.

*Perea,* 986 F.2d at 645 (citations omitted); *see also Posr v. Doherty,* 944 F.2d 91, 98 (2d Cir.1991) ("Whether a seizure is an arrest or merely an investigatory detention, depends on the reasonableness of the level of intrusion under the totality of the circumstances."). In a section 1983 action, it would usually be a jury's task to decide whether a detention amounted to a *de facto* arrest, since "[t]he issue of precisely when an arrest takes place is a question of fact." *Posr,* 944 F.2d at 99. Here, however, the District Court decided as a matter of law that an arrest had been made. On appeal, we must view the evidence, as the District Court was obliged to view it, in the light most favorable to the defendants in order to determine whether "there can be but one conclusion as to the verdict that reasonable [jurors] could have reached." *Metromedia Co. v. Fugazy,* 983 F.2d 350, 359 (2d Cir.1992) (internal quotations omitted), *cert. denied,* — U.S. —, 113 S.Ct. 2445, 124 L.Ed.2d 662 (1993).

■ We agree with the District Court that reasonable jurors could only find that plaintiffs were arrested. This Court has repeatedly ruled that an arrest has occurred in encounters that were much less intrusive

than what occurred here. *See, e.g., United States v. Moreno,* 897 F.2d 26, 31 (2d Cir.), *cert. denied,* 497 U.S. 1009, 110 S.Ct. 3250, 111 L.Ed.2d 760 (1990); *United States v. Levy,* 731 F.2d 997, 1000–01 (2d Cir.1984); *United States v. Marin,* 669 F.2d 73, 81–82 (2d Cir.1982); *United States v. Ceballos,* 654 F.2d 177, 181–84 (2d Cir.1981). The various elements of the plaintiffs' detention, especially when viewed collectively, would not permit a reasonable juror to conclude that the plaintiffs were merely subjected to a *Terry* stop: (a) the plaintiffs were boxed-in by six police vehicles and outnumbered two-to-one by officers with their guns drawn or at the ready, *cf. United States v. King,* 990 F.2d 1552, 1562–63 (10th Cir.1993) (brandishing of gun and encircling of suspect's car amounted to an arrest); *United States v. Novak,* 870 F.2d 1345, 1351–53 (7th Cir.1989) ("full-fledged arrest" when suspect surrounded by six or more officers with one gun drawn); *United States v. Robertson,* 833 F.2d 777, 780–82 (9th Cir.1987) (detention of suspect at gunpoint by at least seven officers was an arrest); (b) the plaintiffs were forcefully ordered from their vehicle, harshly handled, and kept in handcuffs for the duration of the detention, *cf. United States v. Codd,* 956 F.2d 1109, 1111 (11th Cir.1992) (seizing and handcuffing of suspect for extended period constituted an arrest); *United States v. Del Vizo,* 918 F.2d 821, 824–25 (9th Cir.1990) (arrest occurred when suspect ordered from vehicle at gunpoint, forced to lie on ground, and then handcuffed); (c) the plaintiffs were placed in separate police cruisers and questioned, and at least one plaintiff was read *Miranda* rights, *cf. United States v. Richardson,* 949 F.2d 851, 856–58 (6th Cir.1991) (placement of suspect in police cruiser turned detention into an arrest); *United States v. Thompson,* 906 F.2d 1292, 1297 (8th Cir.) (same), *cert. denied,* 498 U.S. 989, 111 S.Ct. 530, 112 L.Ed.2d 540 (1990); and (d) the defendants extensively searched the plaintiffs, their vehicle, and the contents of a bag found inside the vehicle, *see Ybarra v. Illinois,* 444 U.S. 85, 92–94, 100 S.Ct. 338, 342–44, 62 L.Ed.2d 238 (1979) (explaining that a *Terry* stop permits only a limited search for concealed weapons when officer reasonably believes the detainee poses a threat).

Standing alone, no single factor would necessarily convert the plaintiffs' detention from a *Terry* stop into a *de facto* arrest. Indeed, courts have occasionally concluded that a particular detention was a permissible *Terry* stop even though it involved a few of the intrusive elements present in this case. *See, e.g., United States v. Perdue,* 8 F.3d 1455, 1462–63 (10th Cir.1993) (finding *Terry* stop when armed officers ordered suspects to exit their car and to lie on the ground; noting, however, that detention "border[ed] on an illegal arrest"); *see also* Katherine L. Pringle et al., Project, *Twenty–Second Review of Criminal Procedure,* 81 Geo.L.J. 853, 884–87 (1993) (listing cases). For example, in *Dempsey v. Town of Brighton,* 749 F.Supp. 1215 (W.D.N.Y.1990), *aff'd without opinion,* 940 F.2d 648 (2d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 338, 116 L.Ed.2d 278 (1991), a case the defendants rely heavily upon, a district court held that a 20–minute detention involving similar "felony-stop" procedures was not an arrest but "was an investigatory stop based on articulable facts [that], as a matter of law, was reasonable." 749 F.Supp. at 1221.

■ Yet, the defendants do not cite and we have not discovered a single case in which a court found a detention that involved numerous intrusive elements, with little or no reasonable justification, to be a *Terry* stop. In *Dempsey,* for example, the suspects were handcuffed only briefly and the police only conducted a pat-down frisk for weapons. Further, in *Dempsey,* the police conclusively knew that an *armed* robbery had taken place. *See* 749 F.Supp. at 1218–19. Indeed, whenever this Court and other circuits have found an intrusive detention to be only a *Terry* stop, the police have always had a reasonable basis to believe the suspect was armed or otherwise dangerous, *see, e.g., United States v. Alexander,* 907 F.2d 269, 272 (2d Cir.1990), *cert. denied,* 498 U.S. 1095, 111 S.Ct. 983, 112 L.Ed.2d 1067 (1991); *United States v. Nargi,* 732 F.2d 1102, 1106–07 (2d Cir.1984); *United States v. Merkley,* 988 F.2d 1062, 1064 (10th Cir.1993); *Courson v. McMillian,* 939 F.2d 1479, 1495–96 (11th Cir.1991); *United States v. Alvarez,* 899 F.2d 833, 838–39 (9th Cir.1990), *cert. denied,* 498

U.S. 1024, 111 S.Ct. 671, 112 L.Ed.2d 663 (1991); *United States v. Seelye*, 815 F.2d 48, 50 (8th Cir.1987). In this case, the defendants have not suggested, nor did they have any reasonable grounds for believing, that the plaintiffs were armed or otherwise dangerous.[1]

When we consider (1) the numerous oppressive elements of the encounter between the police and the plaintiffs, (2) the limited evidence that there was a crime, and (3) the absence of any indication the plaintiffs were armed or dangerous, we must conclude, as a matter of law, that the plaintiffs were subjected to a "degree of restraint [that] was too intrusive to be classified as an investigative detention." *Perea*, 986 F.2d at 645 (internal quotations and citations omitted). The District Court properly directed a verdict on the arrest issue.

B. *Probable Cause.* The District Court also ruled as a matter of law that the defendants did not have probable cause to arrest the plaintiffs. Arguing that at the very least this issue should have gone to the jury, the defendants point to cases suggesting that probable cause can be established based on a single witness's complaint, *see Torchinsky v. Siwinski*, 942 F.2d 257, 261–62 (4th Cir. 1991); *Grimm v. Churchill*, 932 F.2d 674, 675 (7th Cir.1991), and that probable cause is generally a jury question in damage actions, *see Gramenos v. Jewel Companies, Inc.*, 797 F.2d 432, 438 (7th Cir.1986), *cert. denied*, 481 U.S. 1028, 107 S.Ct. 1952, 95 L.Ed.2d 525 (1987).

■ Information about criminal activity provided by a single complainant can establish probable cause when that information is sufficiently reliable and corroborated. *See generally Alabama v. White*, 496 U.S. 325, 328–31, 110 S.Ct. 2412, 2415–17, 110 L.Ed.2d 301 (1990); *United States v. Wagner*, 989 F.2d 69, 72–74 (2d Cir.1993). Yet, even if bystander witnesses are considered presumptively reliable, a report of a crime alone will not necessarily establish probable cause. *See, e.g., Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1444 (9th Cir.1991) (before they could lawfully arrest suspect, "police officers had a duty to conduct an investigation into the basis of the witness' report"); *see also United States v. Walker*, 7 F.3d 26, 30–31 (2d Cir.1993) (telephone tip needs to possess sufficient indicia of reliability to support even a reasonable suspicion of criminal activity), *cert. denied*, —— U.S. ——, 114 S.Ct. 1201, 127 L.Ed.2d 549 (1994); *United States v. Cutchin*, 956 F.2d 1216, 1217–18 (D.C.Cir. 1992) (without sufficient indicia of reliability or corroboration, call to 911 could not alone provide even the reasonable suspicion needed to justify an investigatory detention); *BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir.1986) ("Reasonable avenues of investigation must be pursued [to establish probable cause] especially when, as here, it is unclear whether a crime had even taken place."). Significantly, when information furnished by a single complainant suffices to establish probable cause, such information often comes from the victim, who has provided specific details of the crime. *See Torchinsky*, 942 F.2d at 262; *Grimm*, 932 F.2d at 675.

■ Notably, this case does not involve an alleged victim or even an eye-witness providing facts and details that, if true, would indicate or even reasonably suggest that a crime had taken place. Rather, as the defendants' conceded at oral argument, the observations of the plaintiffs' actions made by the motorist who alerted the police would not have supported a finding of probable cause if those observations had been made by police officers. A citizen's observations do not acquire enhanced value toward establishing probable cause simply because they are relayed to the police. We would have a different case if the plaintiffs had been observed surreptitiously removing items from a home. But here, all that was observed was one occupant of a vehicle that appeared to be of

---

1. The defendants note that "often burglars are armed or have stolen handguns from the house that they burglarized." The defendants thus seem to suggest that the mere fact that the plaintiffs were suspected of burglary provided the police with a reasonable fear that they were armed and dangerous. However, suspecting a person of having committed a burglary cannot, in and of itself, provide police with grounds to subject that person to an extremely intrusive *Terry* stop. *See Ceballos*, 654 F.2d at 184 (noting that though narcotics traffickers are often very dangerous, "that generalization, without more, is insufficient to justify [an] extensive intrusion").

low value with what appeared to be a somewhat expensive item of personal property. That is not "reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 3032, 120 L.Ed.2d 902 (1992).

The plaintiffs were entitled to a directed verdict holding that the defendants' actions violated their rights under the Fourth Amendment. This determination, however, does not resolve the defendants' assertion of qualified immunity, to which we now turn.

## II. Qualified Immunity

■ As a general rule, police officers are entitled to qualified immunity if (1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights. *See, e.g., Ying Jing Gan v. City of New York*, 996 F.2d 522, 531–32 (2d Cir.1993); *Golino*, 950 F.2d at 870. In the pending case, the District Court ruled as a matter of law that the defendants were not entitled to qualified immunity because "the law [was] clearly established" and "no reasonable officer would believe that the [defendants'] conduct was proper in the absence of probable cause." Though the Court's first basis for rejecting the immunity defense was correct, we conclude that the second basis improperly removed from the jury a disputed issue as to which reasonable jurors could find in the defendants' favor.

■ The right not to be arrested in the absence of probable cause is undoubtedly well-established. *See Soares v. State of Connecticut*, 8 F.3d 917, 920 (2d Cir.1993). It was also clearly established in January 1991 that an unreasonably intrusive detention could not be justified as a *Terry* stop and thus would need to be supported by probable cause. *See Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983); *see also Perea*, 986 F.2d at 644–45 (explaining that a detention using means more intrusive than necessary constitutes an arrest that must be supported by probable

cause); *Alexander*, 907 F.2d at 272–73 (same).

■ Whether it was objectively reasonable for the defendants to believe that they were not violating the plaintiffs' rights is a closer question. The police present two grounds for such a claim here. First, they claim that they reasonably believed that they had probable cause to arrest the plaintiffs. Second, and somewhat more plausibly, they claim that they reasonably believed that their actions constituted only a permissible *Terry* stop based on reasonable suspicion. The District Court implicitly rejected both claims in rejecting the qualified immunity defense as a matter of law.

It is not surprising that the District Court, after ruling as a matter of law that the officers' conduct was unlawful, also ruled as a matter of law that it was objectively unreasonable for the officers to believe that their conduct was lawful. At first blush, the two rulings appear to involve the same question—whether the officers' conduct was objectively reasonable. Indeed, there is a seeming circularity to inquiring first whether the circumstances as perceived by a reasonably prudent police officer would justify the belief that the persons to be arrested had committed a crime, and, after finding that the circumstances would not justify such a belief, proceeding to inquire whether a police officer could reasonably believe that the officer's conduct was lawful. It is not readily apparent how a police officer could have an objectively reasonable belief that conduct was lawful when the unlawfulness of that conduct rests on a determination that an objectively reasonable police officer would not have acted. And the situation is especially perplexing in a case like the pending one where, for purposes of removing the first issue from the jury, it has been determined, correctly in our view, that no reasonable juror could fail to find that the officer's conduct was unlawful.

■ Nevertheless, we have been authoritatively instructed that the objective reasonableness component of the inquiry as to lawfulness is not the same as the objective reasonableness component of the inquiry as to qualified immunity. In *Anderson v. Creigh-*

*ton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), the Court considered and rejected the contention that it is not possible to say that "one 'reasonably' acted unreasonably." *Id.* at 643, 107 S.Ct. at 3041. The Court invoked its prior precedent of *Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), *see Anderson,* 483 U.S. at 643, 107 S.Ct. at 3041, and also argued that the reasonableness component of the lawfulness standard could as well be served by a concept that avoided the word "reasonable" and instead used the word "undue." *Id.*[2] The result of the distinction between reasonableness as a component of a Fourth Amendment violation and reasonableness as a component of an immunity defense is that an officer is protected in some circumstances even when he "mistakenly conclude[s] that probable cause is present," *id.* at 641, 107 S.Ct. at 3039–40, *i.e.,* when he reasonably believes that a reasonably prudent police officer would have acted even though a reasonably prudent police officer would not have acted.

 With the reasonableness inquiries thus separated, the question remains in this case whether the immunity issue required decision by the jury even though the lawfulness issue did not. Though "[i]mmunity ordinarily should be decided by the court," *see*

*Hunter v. Bryant,* —— ·U.S. ——, ——, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991), that is true only in those cases where the facts concerning the availability of the defense are undisputed; otherwise, jury consideration is normally required, *see, e.g., Frank v. Relin,* 1 F.3d 1317, 1328 (2d Cir.), *cert. denied,* —— ·U.S. ——, 114 S.Ct. 604, 126 L.Ed.2d 569 (1993); *Ying Jing Gan,* 996 F.2d at 532; *see also Hurlman v. Rice,* 927 F.2d 74, 78 (2d Cir.1991). Of course, as with any issue of nominally disputed fact, if the state of the evidence is such that reasonable jurors could reach only one conclusion, then that factual issue is appropriate for decision by the court as a matter of law. Thus, the question on review is whether, viewing the evidence in the light most favorable to the police officers, a jury could reasonably conclude that it was objectively reasonable for the defendants to have believed that their detention of the plaintiffs was lawful.

In light of this standard, we think the District Court erred by not submitting the qualified immunity issue to the jury. Though we have decided as a matter of law that the plaintiffs were arrested and this arrest was without probable cause, these holdings do not necessarily mean that it would be unreasonable for a jury to conclude it was objectively reasonable for the police to

---

**2.** With respect, the writer is not wholly persuaded by the Court's explanation. Of course, the Fourth Amendment could be expressed in terms of what is "undue" rather than what is "unreasonable." But if courts then determined the meaning of "undue" in a particular case by asking whether a reasonably prudent police officer would have acted under the circumstances, the anomaly of thinking of the immunity defense as a different question would remain.

The Court further developed its explanation by pointing out that "the precise content of most of the Constitution's civil-liberties guarantees rests upon an assessment of what accommodation between governmental need and individual freedom is reasonable, so that the Creightons' objection, if it has any substance, applies to the application of *Harlow* generally." *Anderson,* 483 U.S. at 643–44, 107 S.Ct. at 3041 (referring to the general rule set forth in *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), that public officials are entitled to qualified immunity when their conduct is objectively reasonable). However, the determination of a reasonable accommodation between governmental need and individual freedom for purposes

of determining the constitutional reach of most civil-liberties guarantees is normally made exclusively by judges, ultimately the justices of the Supreme Court. By contrast, the accommodation appropriate for application of the Fourth Amendment has already been determined by judges to include the objectively reasonable determination that would be made in each case by a prudent police officer. It is this component of the constitutional standard that makes so anomalous the further immunity inquiry into the objective reasonableness of the officer's belief in the lawfulness of the officer's conduct.

The distinction between reasonableness for Fourth Amendment lawfulness and reasonableness for qualified immunity has also been explained as resting on "the less stringent reasonable man standard of the tort action against governmental agents." *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 456 F.2d 1339, 1348–49 (2d Cir.1972) (on remand from Supreme Court) (Lumbard, J., concurring). *See generally* Jon O. Newman, *Suing the Lawbreakers: Proposals to Strengthen the Section 1983 Damage Remedy for Law Enforcers' Misconduct,* 87 Yale L.J. 447, 460–61 (1978).

believe that their detention of the plaintiffs was only a *Terry* stop or that they possessed probable cause to make an arrest. *See Warren v. Dwyer*, 906 F.2d 70, 75 (2d Cir.) (noting that questions of lawfulness and immunity are distinct), *cert. denied*, 498 U.S. 967, 111 S.Ct. 431, 112 L.Ed.2d 414 (1990).

■ Significantly, the trial before the District Court revealed some factual disputes concerning various aspects of the encounter between the police and the plaintiffs. Specifically, there were conflicting accounts of the total duration of the detention, the plaintiffs' responsiveness to the police's instructions, the physical treatment of the plaintiffs once removed from their vehicle, the defendants' use of their weapons, and a number of other particulars. These disputes bear directly upon whether it was objectively reasonable for the officers to believe that they were acting lawfully. *See Calamia v. City of New York*, 879 F.2d 1025, 1036 (2d Cir.1989) (factual dispute entailed that jury should answer whether it was objectively reasonable for officer to believe he did not violate plaintiff's rights). The District Court should have let the jury (a) resolve these factual disputes and (b) based on its findings, decide whether it was objectively reasonable for the defendants to believe that they were acting within the bounds of the law when they detained the plaintiffs.[3]

### Conclusion

We affirm that part of the District Court's directed verdict ruling that as a matter of law the defendants violated the plaintiffs' rights under the Fourth Amendment. We reverse that part of the directed verdict ruling that as a matter of law the defendants were not entitled to qualified immunity. We therefore vacate the judgment and remand for a new trial at least on the issue of qualified immunity. We leave it to the discretion

of the District Court whether the jury considering the immunity issue should also redetermine the amount of damages in the event that it rejects the immunity defense.

MAHONEY, Circuit Judge, concurring in part and dissenting in part.

I agree with my colleagues that the judgment of the district court must be vacated and remanded. In my view, however, it was erroneous to direct a verdict on any aspect of this case, and not just on the defense of qualified immunity. I accordingly join in the majority opinion to the extent that it vacates the ruling of the district court as to qualified immunity, but respectfully dissent from that opinion insofar as it leaves undisturbed the balance of the district court's directed verdict in behalf of plaintiffs. I would vacate the district court's judgment *in toto* and remand for a new trial on all issues.

In saying this, I am of course aware that the Supreme Court has made it clear that a somewhat different standard applies to the issues of probable cause and qualified immunity. Thus, it is possible to find, as the majority does in this case, that a jury issue is presented as to qualified immunity, but not as to probable cause. I disagree, however, with the majority's reading of the record in this case to reach that result.

It seems clear that the initial stop of the plaintiffs was a *Terry* stop, and I do not understand the majority to view the matter differently. The complaining witness testified that he suspected a burglary, remained in telephone contact with the police dispatcher, and pursued the vehicle in which the plaintiffs were apparently departing from Stamford. This scenario provided reasonable suspicion for a *Terry* stop. *See* 3 Wayne R. LaFave, *Search and Seizure* § 9.3(e), at 479 & n. 313 (1987 & Supp.1994)

---

**3.** Crediting the defendants' version of the encounter, as we must on appeal, we find in particular that a reasonable jury could conclude that it was objectively reasonable for the defendants to believe that they were conducting only a *Terry* stop. According to the police officers' account, they detained the plaintiffs less than twenty minutes and they acted quickly to verify whether a burglary had been committed. Though the harsh treatment of the plaintiffs during the detention

precludes a finding that the defendants in fact conducted only a *Terry* stop, the defendants' diligent efforts to confirm or dispel their suspicions would permit a reasonable jury to find that the police reasonably believed that they only conducted a *Terry* stop. *Cf. United States v. Sharpe*, 470 U.S. 675, 686–88, 105 S.Ct. 1568, 1575–76, 84 L.Ed.2d 605 (1985) (20–minute detention was a *Terry* stop when police diligently investigated their suspicions).

(collecting cases). Indeed, plaintiffs' expert witness testified that the stop was justified.

The fact that the plaintiffs' car was blocked by a number of police vehicles, and that the police approached the stopped vehicle with guns drawn, does not change the analysis. In *United States v. Perea*, 986 F.2d 633 (2d Cir.1993), where "[g]overnment cars ... blocked [a] cab in front and back and on one side, and the agents approached the cab, some with guns drawn," *id.* at 636, we nonetheless "note[d] our agreement with the district court's ruling that the initial stop of the livery cab was not an arrest but rather a *Terry* stop." These are obvious precautions to avert a high speed chase or a possible shootout, with all their attendant dangers to both the participants and the general public.

The majority maintains, however, that (1) the situation evolved into an arrest, (2) there was no probable cause for the arrest, and (3) both of these propositions are so clearly correct that they were properly taken from the jury. The conclusion that an arrest occurred is mandated, we are told, because of "(1) the numerous oppressive elements of the encounter between the police and the plaintiffs, (2) the limited evidence that there was a crime, and (3) the absence of any indication the plaintiffs were armed or dangerous." Similarly, no jury could rationally find probable cause for an arrest, we are advised, because "all that was observed was one occupant of a vehicle that appeared to be of low value with what appeared to be a somewhat expensive item of personal property."

The "oppressive" elements of the encounter involve, as the majority seems to acknowledge, fairly standard "felony stop" procedures. If there is a basis to detain a suspect, the detention does not become an arrest simply because the suspects are handcuffed. *See Dempsey v. Town of Brighton*, 749 F.Supp. 1215, 1223 (W.D.N.Y.1990), *aff'd mem.*, 940 F.2d 648 (2d Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 338, 116 L.Ed.2d 278 (1991). Moreover, "a person is not under arrest simply because he is placed in a police patrol car." *Id.* (citing *United States v. Parr*, 843 F.2d 1228, 1231 (9th Cir.1988)).

In addition, the relative brevity of the detention argues against the conclusion that there was an arrest. *See United States v. Sharpe*, 470 U.S. 675, 688, 105 S.Ct. 1568, 1576, 84 L.Ed.2d 605 (1985) ("We reject the contention that a 20–minute stop is unreasonable when the police have acted diligently and a suspect's actions contribute to the added delay about which he complains."). The detention in this case might have been insignificantly brief but for the plaintiffs' inability to respond to police commands, or provide either the name of the person who employed them for masonry work or the address at which it was performed. And when the plaintiffs provided the police with a telephone number that would resolve their identification, the person who answered the phone could not speak English.

Nor do I agree with the majority's assessment of the evidence of (1) criminality, or (2) the prospect that the plaintiffs might be armed and dangerous. As to the latter, the police were fully justified in executing "felony stop" procedures that assume the possibility that persons reasonably suspected of a burglary are armed and dangerous. The alternatives are to forgo the *Terry* stop, or to execute it on the basis of necessarily limited information without taking "felony stop" precautions, and hope for the best. I don't regard either option as a constitutional requirement.

The issue of the evidence of criminality coalesces with the question of probable cause. The majority regards this evidence as limited to observation of "one occupant of a vehicle that appeared to be of low value with what appeared to be a somewhat expensive item of personal property." This apparently refers to what the complainant knew, in which event the assessment disregards the complainant's testimony that: (1) his mother lived very near the dead end street from which the plaintiffs' vehicle emerged; (2) the complainant had been brought up in that neighborhood; (3) he knew of a number of recent burglaries in the neighborhood by cars bearing New York license plates; (4) he knew the plaintiffs were not residents of the neighborhood; and (5) the fact that they were driving a station wagon, rather than a

workman's truck, dissuaded him from believing that they had been working in the neighborhood.

Of course, all this information cannot be attributed to the police, for there is no evidence that they were privy to it. There is evidence, however, that very shortly after the plaintiffs were detained, they provided, as an exculpatory explanation for their presence on the dead end street, the claim that they were building a wall at an address on the street that they could not specify for an employer whom they could not name. These improbable assertions, especially viewed in the context of the initial complaint, are strongly conducive to a finding of probable cause. *Cf. United States v. Moreno,* 897 F.2d 26, 31–32 (2d Cir.1990).

In any event, after being provided with this implausible account, the police promptly investigated the neighborhood of the alleged burglary and interviewed the complainant. As a result, the plaintiffs were released in a matter of minutes thereafter.

The majority opinion does not specify precisely when, in its view, an arrest occurred. A reasonable jury could conclude, however, that the plaintiffs' apparent inability to explain their presence in the neighborhood, together with the complainant's report of a suspected burglary, resulted in a police perception of probable cause very early in the course of the plaintiffs' detention. Alternatively, a reasonable jury could conclude that the *Terry* stop did not evolve into an arrest during the quite limited period when the plaintiffs were detained and the police undertook an investigation that resulted in the plaintiffs' release. I accordingly disagree with my colleagues' ruling that both of these issues were properly taken from the jury.

The observations of the Supreme Court in *Sharpe* seem especially apt for this occasion:

In assessing whether a detention is too long in duration to be justified as an investigative stop, we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant. A court making this assessment should take care to consider whether the police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second-guessing. A creative judge engaged in *post hoc* evaluation of police conduct can almost always imagine some alternative means by which the objectives of the police might have been accomplished.... The question is not simply whether some other alternative was available, but whether the police acted unreasonably in failing to recognize or to pursue it.

897 F.2d at 686–87 (citations omitted).

In my view, both the district court ruling on liability and the majority opinion in this court constitute unwarranted exercises of the sort of 20–20 hindsight that *Sharpe* disparages. I would vacate and remand for a trial of all the issues in this case.