Richard **TOBING** et al., Plaintiffs,

v.

The **CITY OF NEW YORK** et al., Defendants.

No. 92–CV–4325 (JS).

United States District Court, E.D. New York.

June 3, 1996.

Andrew G. Celli, Jr., Law Offices of Richard Emery, P.C., New York City, for Plaintiffs.

A. Jonathan Trafimow, Assistant Corporation Counsel, Corporation Counsel of the City of New York, New York City, for Defendants.

## MEMORANDUM AND ORDER

SEYBERT, District Judge:

In the instant civil-rights action brought under 42 U.S.C. § 1983, several plaintiffs bring suit against the City of New York, and several individual defendants associated with the Sheriff's Office of the City of New York. The branch of this case for which a motion is pending before the Court concerns the claims of plaintiffs Richard and Sylvia Tobing arising from an incident that transpired on March 23, 1992. In this incident, defendants Marlon White and Daniel Rodriguez, sheriff's deputies employed by the New York City Sheriff's Office, allegedly arrested the plaintiffs without probable cause to believe that the plaintiffs had committed a crime, and used excessive force in connection with this arrest, thereby violating plaintiffs' Fourth Amendment rights. The basis for this seizure was a civil judgment—later found to be erroneous—against the Tobings' vehicle for unpaid parking tickets.

Pending before the Court is defendants' motion for summary judgment dismissing this case in its entirety, or alternatively seeking partial summary judgment with respect to plaintiffs' excessive force claims. Defendants principally contend that the incident in question constituted a *Terry* stop, *see Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), which requires only reasonable suspicion that criminal activity was afoot, as opposed to probable cause which is needed to effect an arrest. Defendants moreover argue that any force that they employed was reasonable under the circumstances. Defendants further contend that even if they violated plaintiffs' constitutional rights, they are protected from suit for damages by a quali-fied immunity defense because no reasonable jury could find that it was objectively unreasonable for them to believe that they were not violating plaintiffs' federal constitutional rights.

The chief flaw in the defendants' arguments is that they fail to consider the sharply disputed material facts as evidenced by the plaintiffs' deposition testimony, which, if believed by the trier of fact, would warrant the conclusion that an arrest indeed had been effected, thereby requiring probable cause. The sharply disputed factual assertions moreover preclude the availability of a qualified immunity defense. For these reasons, which are further discussed below, the defendants' motion is denied in its entirety.

## FACTUAL BACKGROUND

Viewed in the light most favorable to the plaintiffs (except as where otherwise noted), the record shows that at approximately 8:35 A.M., on the morning of March 23, 1992, plaintiffs Richard Tobing, an off-duty Housing Police Detective, and his wife Sylvia Tobing, were proceeding slowly on South Street in lower Manhattan looking for a parking spot where they could stop to feed their nine-month-old baby. A tow truck approached them from the front with its lifting fork lowered. Puzzled, they moved to avoid the tow truck and proceeded through City streets normally with traffic. The tow truck followed them.

Defendants contend that, not a tow truck, but the Sheriff's Department's white Ford Taurus, bearing a rack of red and white lights on the roof and an official Sheriff's Department emblem on the side, followed directly behind the Tobing vehicle. They further contend that their Taurus was "in [plaintiffs'] rear view mirror" from the moment the Tobings proceeded on South Street.

Traffic was heavy and plaintiffs' vehicle did not exceed the speed limit or run any red lights. Suddenly, the Taurus pulled alongside the Tobing vehicle. The occupants of the Taurus—White and Rodriguez—pointed their guns at the Tobings and ordered them to stop. Almost instantaneously, the Taurus swerved and blocked the Tobings' path.

88

Defendants contend that the Tobings' vehicle ran multiple red lights and exceeded the speed limit. They further contend that they never pointed their guns out the window of their vehicle in order to force the Tobings to stop. In their depositions, defendants conceded that what occurred was not a "chase" or a "pursuit," but that they simply "followed" the Tobing vehicle. The Sheriff's deputies never engaged their lights and sirens during this maneuver.

White testified that he could not recall whether he had probable cause to believe that Detective Tobing had committed a crime when he followed the Tobings' vehicle. White gave the following testimony about his cause to stop the Tobings:

Q. When you were following people who were breaking speed limits [later clarified to refer expressly to the Tobings]; did you have any reason to believe that they were engaged in any other criminal activity, other than being a judgment debtor?

A. That's really hard to determine from your car.... [I]f people know who you are and they are running, it would strike something in you to think that maybe this guy did something [other] than owing parking tickets.

White Dep. 54.

With the two vehicles stopped on Pearl Street, defendants approached the Tobings' vehicle and ordered Detective Tobing out of the car at gun-point. White stood near the driver's side door, pointed the pistol at Detective Tobing, and threatened to "blow [his] head off." Rodriguez stood at the left of the Tobing vehicle and pointed his weapon through the windshield toward Detective Tobing and the interior of the Tobing vehicle.

Defendants contend that, as they approached initially, Detective Tobing, who was in the driver's seat, made a "bobbing motion" with his head and appeared to be reaching for something—possibly a weapon—under the dashboard. They further contend that White never unholstered or pointed his gun at the plaintiffs, and that Rodriguez unholstered his weapon as a precaution, but pointed it toward the ground at all times.

In any event, Detective Tobing complied with the defendants' order to exit the vehicle. Detective Tobing was neither searched nor subjected to a "pat-down" by either officer. Rather, White pinned Detective Tobing to the vehicle's hood and levelled his weapon at him, used profanity, and stated that the officers were seizing the Tobing vehicle. Furthermore, White grabbed Detective Tobing in a "bear hug" and squeezed him, threatening to lock him up. Later, as Rodriguez approached Mrs. Tobing with his firearm unholstered, White used his arms to encircle Detective Tobing in order to restrain him. At no point during this encounter did Detective Tobing exhibit hostility to the Officers.

White denies using his weapon at all, and denies pinning, "bear-hugging," or using his arms to encircle Richard Tobing.

Meanwhile, Rodriguez approached Mrs. Tobing on the other side of the vehicle, twice, with his gun drawn. On the second occasion, he ordered her out of the car. As she attempted to comply—slowly because, as her husband repeatedly announced, she suffered from a bad back—Rodriguez yanked her out of her car, causing her to "fall on her feet" and strain her back. Mrs. Tobing alleges that being pulled from her car by Rodriguez caused a back strain, which necessitated treatment twice a week for a month.

During his deposition, Rodriguez made no mention of yanking Mrs. Tobing out of her car.

All tolled, defendants' seizure of the Tobings lasted approximately twenty minutes. By the time the Tobings were released, a crowd of people had gathered.

## DISCUSSION

Under the law of the Second Circuit, a district court must weigh the following considerations in evaluating whether to grant a motion for summary judgment with respect to a particular claim:

First, summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving par-

ty is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Second, the burden is upon the moving party to demonstrate that no genuine issue respecting any material fact exists. In considering that, third, all ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judgment is sought. Fourth, the moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case. When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper.... Finally, the trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding, it does not extend to issue-resolution.

*Gallo v. Prudential Residential Servs., L.P.,* 22 F.3d 1219, 1223–24 (2d Cir.1994) (internal case citations omitted); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").

Defendants White and Rodriguez now move this Court for summary judgment asserting that, as a matter of law: (1) their seizure of the Tobings and the force used to effect it were "reasonable" and not excessive under the Fourth Amendment; or alternatively (2) that they are entitled to summary judgment under the doctrine of qualified immunity. Specifically, defendants contend, *first,* that their seizure of the plaintiffs was justified by "reasonable suspicion" under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and *second,* that the force used to enforce a civil judgment for unpaid parking tickets, upon considering their suspicions that the Tobings may have had "something" to hide—including the pointing of revolvers at both Detective Tobing and Mrs. Tobing, and the physical re-

straint of each—constituted reasonable police conduct, or at least colorably reasonable police conduct, under the circumstances. In view of the sharply disputed facts in the record, defendants' contentions are without merit.

■ To begin with, defendants' assumed conclusion that seizure of the Tobings was a *Terry* stop rather than an arrest is premature at this juncture of the litigation. Because this determination depends entirely upon whose version of the events the jury accepts, the question of whether the seizure was a stop (requiring only reasonable suspicion) or an arrest (requiring probable cause) is a fact issue for the jury. *See Posr v. Doherty,* 944 F.2d 91, 99 (2d Cir.1991). Because the reasonableness of the force used turns, in part, upon the level of the Fourth Amendment intrusion, this issue, in view of the sharply disputed facts alleged, moreover should be resolved by the jury so that plaintiffs' excessive force claims can be addressed in context. *See Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (Excessive force claims of free citizens are analyzed under the objective reasonableness standard of the Fourth Amendment.); *Signorile v. City of New York,* 887 F.Supp. 403, 420 (E.D.N.Y.1995) ("[T]he appropriateness of [the] use of force is closely linked to whether it was objectively reasonable for the officers to have believed that their conduct was justified by ... probable cause.").

Second, a reasonable jury could find that *no* Fourth Amendment seizure—including a *Terry* stop—was permissible in this case. Taking the facts in the light most favorable to the plaintiffs, defendants White and Rodriguez arguably had *no* articulable factual basis to believe that the Tobings were engaged in any criminal conduct, or that criminal activity was "afoot" sufficient to justify a seizure. A reasonable jury could find that, at most, what defendants actually believed is that a *civil* judgment authorized them to have the Tobing vehicle towed in order to satisfy that judgment—not that they had cause to effect a Fourth Amendment seizure of the Tobings.

Third, even assuming that the seizure itself was justified by a civil judgment in view of the Tobing vehicle's putative flight, a reasonable jury could conclude that the force used on both Detective Tobing (including prolonged gun-point, threats, a "bear-hug," "pounding" on his chest, and other physical restraints), and Mrs. Tobing (holding at gun-point and being pulled out of a car despite Detective Tobing's admonition that she had a bad back) was excessive under the circumstances. Crediting plaintiffs' version of the events for purposes of this motion, a reasonable jury could find that White and Rodriguez had no reason to believe that the Tobings were fleeing or that their safety was in jeopardy when they approached the Tobing vehicle and held the Tobings at gun-point; that the physical restraints used by the deputies were grossly disproportionate to their stated goal of towing plaintiffs' car away; and that the prolonged and confrontational nature of the seizure had no other legitimate purpose.

■ Finally, defendants' qualified immunity defense fails on essentially the same grounds. Proceeding with the qualified immunity analysis, *first*, the Tobings' federal constitutional right to be free from arrest except upon probable cause, and to be free from the use of excessive force, is clearly established. *Second*, numerous factual questions must be resolved by a jury before the objective reasonableness of defendants' conduct can be determined. *See Cook v. Sheldon*, 41 F.3d 73, 78 (2d Cir.1994); *Oliveira v. Mayer*, 23 F.3d 642, 648–49 (2d Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 721, 130 L.Ed.2d 627 (1995); *Calamia v. City of New York*, 879 F.2d 1025, 1036 (2d Cir.1989); *compare Lennon v. Miller*, 66 F.3d 416, 426 (2d Cir.1995) (district court erred in denying defendants' motion for summary judgment where "no [reasonable] jury could find that it was objectively unreasonable for the officers to believe that the force used to remove [the plaintiff] from the car was not excessive," where plaintiff refused to leave the car on her own power).· In the case at bar, the disputed factual questions include the issues of stop versus arrest, the magnitude of the force actually employed, and the circumstances provoking the same in respect of each of the plaintiffs. For these reasons, the qualified immunity defense is unavailable on the present motion for summary judgment.[1]

### CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is DENIED in its entirety.

SO ORDERED.

---

**1.** The Court has considered all of the defendants' other arguments and finds them to be without merit.