John L. WRIGHT, Plaintiff,

v.

Douglas WILBURN, Defendant.

No. 3:98–CV–849.

United States District Court,
N.D. New York.

March 13, 2000.

Law Offices of Robert Isseks, Middletown, NY, Evan M. Foulke, of counsel, for Plaintiff.

Attorney General of the State of New York, Office of the Attorney General, Albany, NY, James J. Seaman, AAG, David L. Fruchter, AAG, of counsel, for Defendant.

## MEMORANDUM–DECISION & ORDER

McAVOY, Chief Judge.

### I. Background

Plaintiff John Wright ("Wright") brought suit against Defendant Douglas Wilburn ("Wilburn") pursuant to 42 U.S.C. § 1983 alleging claims of false arrest, excessive force and malicious prosecution. This matter proceeded to trial before a jury on January 18, 2000.

During the charge conference held on January 31, 2000, the Court reviewed the text of the jury charge and verdict sheet packet with the parties and gave them an opportunity to object to any portion of the charge and verdict sheet. With respect to the Court's instructions regarding Plaintiff's excessive force claim (the only portion of the jury's verdict challenged by Plaintiff in the instant motion), the charge contained separate instructions regarding substantive liability, i.e., whether Defendant used objectively unreasonable or excessive force when he arrested Plaintiff, and qualified immunity, i.e., whether a reasonable police officer, judged by an objective standard, would disagree on the legality of Defendant's actions. Consequently, the jury was required to make two separate and distinct inquiries with respect to the "reasonableness" of Defendant's actions—the first focused on reasonableness as a component of a Fourth Amendment violation and the second focused on reasonableness as a component of a qualified immunity defense.

During the charge conference, Defendant objected to the Court's decision to submit the issue of qualified immunity to the jury. *See* Transcript of January 31, 2000 Charge Conference at 3–4 (Docket No. 56). Plaintiff made no such objection to that portion of the

charge and, moreover, included substantially similar language in its proposed verdict sheet filed with the Court. *See id.;* Pl. Proposed Special Verdict Form, at 1–2 (Docket No. 21).

At the close of trial, Defendant made motions pursuant to FED. R. CIV. P. 50(a) with respect to: (1) Plaintiff's false arrest, malicious prosecution and excessive force claims and (2) the issue of qualified immunity. *See* Transcript of February 1, 2000 Proceedings at 3–4 (Docket No. 57). The Court denied Defendant's first motion and reserved on the actual malice element of Plaintiff's malicious prosecution claim and on the issue of qualified immunity. *See id.* at 5–6. Plaintiff, however, did not move, pursuant to Rule 50(a), on the issue of whether Defendant was entitled to qualified immunity.

The jury was charged late the following day. Before the jury began their deliberations, the Court again gave the parties an opportunity to object to any portion of the jury charge or verdict sheet outside the presence of the jury. *See* Transcript of February 1, 2000 Proceedings at 52–56 (Docket No. 58). This part of the trial was especially critical as it provided the Court with an opportunity to amend the charge or verdict sheet before the jury began deliberating. At that time, both parties placed objections on the record. Plaintiff objected to the inclusion of reckless endangerment in the second degree as an offense upon which Defendant based his probable cause determination at the time Plaintiff was arrested. *See id.* at 52. Plaintiff also objected to the Court charging elements of disorderly conduct that were not part of the accusatory instrument. *See id.* at 53. In addition to renewing his objection regarding submitting the issue of qualified immunity to the jury, Defendant objected to the "generality" of that portion of the charge and whether the charge sufficiently clarified that qualified immunity was Defendant's sole burden of proof in this case. *See id.* at 54–55. Defendant again renewed his Rule 50 motions. At that time, Plaintiff made no Rule 50 motions. As it was near the end of the day, the Court instructed the jury that they would begin their deliberations the following day, February 2, 2000.

During deliberations, the jury raised a question regarding question I(B)(2) of the verdict sheet, which addressed qualified immunity with respect to Plaintiff's excessive force claim. *See* Docket No. 46. Notably, it is that portion of the verdict sheet that Plaintiff now challenges in connection with his motion for a new trial. Immediately thereafter, the jury raised a second question on this issue, indicating that they were missing two pages of the Court's charge that dealt with qualified immunity. *See* Docket No. 47. Recognizing that the jury's confusion on this issue stemmed from the missing pages, the Court referred the jury to the specific portion of the charge addressing qualified immunity. *See* February 3, 2000 Transcript of Proceedings at 4–6 (Docket No. 60). Neither party objected to the Court's supplemental instruction on this point. *See id.* at 6.

Near the end of the second full day of deliberations, the jury returned a verdict. On Plaintiff's false arrest and malicious prosecution claims, the jury found that probable cause existed for Plaintiff's arrest and subsequent criminal prosecution on the disorderly conduct and resisting arrest offenses. On the excessive force claim, the jury found that although Defendant used unreasonable or excessive force against Plaintiff, a reasonable police officer in Defendant's position would have believed his conduct was legal.[1] *See id.*

---

1. In connection with Plaintiff's section 1983 claims, the Court employed a special verdict sheet that included detailed interrogatories on the issues of liability, qualified immunity and damages. With respect to Plaintiff's excessive force claim, the interrogatories were as follows:

(1) Do you find that defendant Wilburn used force on plaintiff Wright that was objectively unreasonable or excessive during the course of arresting plaintiff?

The jury was instructed that it should proceed to the next question only if it answered question (1) in the affirmative.

(2) Do you find that a reasonable police officer in the defendant's position would have believed his conduct was legal?

The jury answered the questions of liability and qualified immunity in the affirmative. *See* Verdict Sheet Package at 6–7. The parties do not dispute that the first question addressed liability and the second question addressed qualified immunity. *See* Pl. Mem. of Law at 1–2; Def. Mem. of Law at 4.

at 7–9; Verdict Sheet Package at 4–10 (Docket No. 38). Following the jury's verdict and prior to their discharge, Plaintiff neither requested that the jury be polled nor raised any objection to any portion of the jury's verdict. *See* February 3, 2000 Transcript of Proceedings, at 10. Final judgment was entered on February 7, 2000. *See* Docket No. 51.

Plaintiff now moves for a partial new trial, pursuant to FED. R. CIV. P. 59(a), solely with respect to the jury's verdict on Plaintiff's excessive force claim.[2] *See* Pl. Notice of Motion at 1 (Docket No. 52). In support of his motion for a new trial, Plaintiff argues that the Court, rather than the jury, should have determined whether Defendant was entitled to qualified immunity on the excessive force claim. Plaintiff further argues that, even accepting Defendant's version of the facts as true, Plaintiff is entitled to judgment as a matter of law on the issue of qualified immunity with respect to Plaintiff's excessive force claim.[3] In response, Defendant advances four grounds for denying Plaintiff's relief: (1) Plaintiff waived the right to object to the submission of the qualified immunity issue to the jury; (2) submission of the qualified immunity issue to the jury does not warrant a new trial; (3) Plaintiff waived the right to seek judgment as a matter of law on the issue of qualified immunity; and (4) even assuming Plaintiff did properly move for judgment as a matter of law on the qualified immunity issue, he is not entitled to such relief. *See* Def. Mem. of Law at 1.

## II. Discussion

### A. Standards For a New Trial Under Rule 59

■ "A district court should grant a new trial motion if it 'is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice.'" *United States v. Landau,* 155 F.3d 93, 104 (2d Cir.1998) (quoting *Smith v. Light-*

ning Bolt Productions, Inc., 861 F.2d 363, 370 (2d Cir.1988)); *see also DLC Management Corp. v. Town of Hyde Park,* 163 F.3d 124, 133 (2d Cir.1998); *Dunlap–McCuller v. Riese Org.,* 980 F.2d 153, 158 (2d Cir.1992) ("[T]he grant of a new trial on weight of the evidence grounds should be reserved for those occasions where the jury's verdict was egregious."), *cert. denied,* 510 U.S. 908, 114 S.Ct. 290, 126 L.Ed.2d 239 (1993). "A new trial may be granted, therefore, when the jury's verdict is against the weight of the evidence." *DLC Management Corp.,* 163 F.3d at 133 (citations omitted); *see also Newmont Mines Ltd. v. Hanover Ins. Co.,* 784 F.2d 127, 132–33 (2d Cir.1986). A court may weigh conflicting evidence and need not view such evidence in the light most favorable to the nonmoving party. *See Song v. Ives Lab., Inc.,* 957 F.2d 1041, 1047 (2d Cir.1992). A trial judges's disagreement with the jury's verdict alone, however, is insufficient reason to grant the motion for a new trial. *See Saloomey v. Jeppesen & Co.,* 707 F.2d 671, 679 (2d Cir.1983).

■ "A district court has a duty to reconcile the jury's answers on a special verdict form with any reasonable theory consistent with the evidence, and to attempt to harmonize the answers if possible under a fair reading of those answers." *McGuire v. Russell Miller, Inc.,* 1 F.3d 1306, 1311 (2d Cir.1993) (citing *Gallick v. Baltimore & Ohio R.R.,* 372 U.S. 108, 119, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963)); *see also Indu Craft, Inc. v. Bank of Baroda,* 47 F.3d 490, 497 (2d Cir.1995). Accordingly, "[t]he court must search for a reasonable way to read the verdicts as expressing a coherent view of the case, . . . and if there is any way to view a case that makes the jury's answers to the special verdict form consistent with one another, the court must resolve the answers that way even if the interpretation is strained." *McGuire,* 1 F.3d at 1311; *see also Snyder v. Trepagnier,* 142

---

2. In the instant motion, Plaintiff does not challenge the jury's verdict with respect to his false arrest and malicious prosecution claims.

3. While Plaintiff's Notice of Motion seeks a new trial with respect to causation and damages on Plaintiff's excessive force claim pursuant to FED.

R. CIV. P. 59(a), his Memorandum of Law seeks the broader relief of judgment as a matter of law on the issue of qualified immunity with respect to the excessive force claim pursuant to FED. R. CIV. P. 50(a), (b). *See* Pl. Mem. of Law at 5–6; Def. Mem. of Law at 20–24.

F.3d 791, 800 (5th Cir.1998) ("Only if there is no view of the case that will make the jury's answers consistent may we set aside its decision.") (citation omitted), *cert. dismissed,* 526 U.S. 1083, 119 S.Ct. 1493, 143 L.Ed.2d 575 (1999). The Court's decision to grant or deny a motion for a new trial is reviewed under an abuse of discretion standard. *See Atkins v. New York City,* 143 F.3d 100, 102 (2d Cir.1998).

## B. Plaintiff's Waiver of Objection to Qualified Immunity Issue

In the present case, the error alleged by Plaintiff focuses on the instruction provided in the verdict form concerning qualified immunity with respect to Plaintiff's excessive force claim and, specifically, whether that issue should have been presented to the jury or decided by the Court. "Because the subject of [Plaintiff's] complaint was an instruction, not the omission of a question, [the Court will] treat his challenge as an objection to a jury instruction pursuant to Federal Rule of Civil Procedure 51." *Barrett v. Orange County Human Rights Comm'n,* 194 F.3d 341, 349 (2d Cir.1999).

Rule 51 sets forth clear time requirements for raising an objection to the Court's jury instructions:

At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury. The court, at its election, may instruct the jury before or after argument, or both. *No party may* assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury.

FED. R. CIV. P. 51 (West 1999) (emphasis added).

■ "The purpose of ... [FED. R. CIV. P. Rule 51] is to allow the trial court an opportunity to cure any defects in the instructions before sending the jury to deliberate." *Fogarty v. Near N. Ins. Brokerage, Inc.,* 162 F.3d 74, 79 (2d Cir.1998). Accordingly, "[f]ailure to object to a jury instruction or the form of an interrogatory prior to the jury retiring results in a waiver of that objection." *Lavoie v. Pacific Press & Shear Co.,* 975 F.2d 48, 55 (2d Cir.1992) ("Surely litigants do not get another opportunity to assign as error an allegedly incorrect charge simply because the jury's verdict comports with the trial court's instructions."); *see also Barrett,* 194 F.3d at 349; *Fogarty,* 162 F.3d at 79.

■ The Court gave both parties a number of opportunities to object to the charge and verdict sheet: (1) during the charge conference,[4] *see* Transcript of January 31, 2000 Charge Conference at 3–4; (2) outside the presence of the jury before the jury began their deliberations,[5] *see* February 1, 2000 Transcript of Proceedings at 52–56; and (3) again outside the presence of the jury after the jury returned their verdict,[6] *see* February 3, 2000 Transcript of Proceedings at 10. Despite numerous opportunities, Plaintiff failed to object to the portion of the

4. At that time, while Defendant objected to submitting the qualified immunity issue to the jury, Plaintiff made no such objection to that portion of the charge and, moreover, included similar language in its proposed verdict sheet. *See* Transcript of January 31, 2000 Charge Conference at 3–4.

5. At that time, both parties placed objections on the record. Plaintiff objected to the inclusion of reckless endangerment in the second degree as an offense upon which Defendant based his probable cause determination at the time Plaintiff was arrested, *see* February 1, 2000 Transcript of Proceedings, at 52, and to the Court charging

elements of disorderly conduct that were not part of the accusatory instrument, *see id.* at 53. In addition to renewing his objection regarding submitting the issue of qualified immunity to the jury, Defendant objected to the "generality" of that portion of the charge and whether the charge sufficiently clarified that qualified immunity was Defendant's sole burden of proof in this case. *See id.* at 54–55.

6. At that time, Plaintiff raised no objection to *any* portion of the jury's verdict. *See* February 3, 2000 Transcript of Proceedings at 10.

Court's charge and verdict sheet that addressed whether the qualified immunity issue should be submitted to the jury (or any other portion of the Court's jury instructions and verdict sheet). This may be explained, in part, by the fact that Plaintiff's proposed jury instructions also submits the question of qualified immunity to the jury if the jury first determined that Defendant was liable.[7] *See* Pl. Proposed Special Verdict Form, at 1–2. Notably, the Court employed similar interrogatories in its special verdict sheet. Thus, the Court's verdict sheet *paralleled* Plaintiff's proposed verdict sheet on the issues of liability and qualified immunity with respect to Plaintiff's excessive force claim. In this sense, Plaintiff is now objecting to a structure similar to that used in its own proposed verdict sheet filed with the Court. Moreover, because Defendant raised his own objection to submitting the qualified immunity issue to the jury, Plaintiff was provided ample notice of this issue and could have easily objected to the jury's verdict sheet before the jury retired to begin their deliberations or was discharged by the Court following their verdict. Plaintiff's failure to object at these times precluded the Court from considering whether that portion of the charge should be modified "to prevent [an] unnecessary new trial[ ]." *Bonner v. Guccione*, 178 F.3d 581, 586 (2d Cir.1999) (quotation omitted) (citing 9A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE: CIVIL 2D, § 2551 at 384 (2d ed. 1994) ("The necessity of a retrial is avoided when, by design or through sheer neglect, the losing party fails to object to an instruction by the court or its failure to give one at the proper time.")); *Heidorf v. Town of Northumberland*, 1998 WL 357319, at *3 (N.D.N.Y. June 22, 1998) ("The purpose of waiver is 'to promote the efficiency of trials by allowing the original deliberating body to reconcile inconsistencies without the need for a new presentation of evidence to a different

body.'") (quoting *Fernandez v. Chardon*, 681 F.2d 42, 58 (1st Cir.1982)). Accordingly, Plaintiff waived his right to assign error to the Court's decision to submit the issue of qualified immunity to the jury. *See, e.g., Lavoie*, 975 F.2d at 55; *Cohen v. Franchard Corp.*, 478 F.2d 115, 122 (2d Cir.) ("Appellants' prior acquiescence in this portion of the charge, coupled with their failure to object to it as given, precludes them from raising the issue of reliance on appeal."), *cert. denied*, 414 U.S. 857, 94 S.Ct. 161, 38 L.Ed.2d 106 (1973).

### C. Submission of Qualified Immunity Issue to the Jury

Even assuming that Plaintiff is not procedurally barred from raising an objection to the Court's charge and verdict sheet on the issue of qualified immunity, Plaintiff's motion must fail on the merits.

■ "As a general rule, police officers are entitled to qualified immunity if (1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights." *Oliveira v. Mayer*, 23 F.3d 642, 648 (2d Cir.1994), *cert. denied*, 513 U.S. 1076, 115 S.Ct. 721, 722, 130 L.Ed.2d 627 (1995); *see also Tierney v. Davidson*, 133 F.3d 189, 196 (2d Cir.1998). "The objective reasonableness test is met if officers of reasonable competence could disagree on the legality of the defendant's actions." *Tierney*, 133 F.3d at 196 (quotations omitted); *Lee v. Sandberg*, 136 F.3d 94, 102 (2d Cir.1997) ("A police officer has acted in an objectively unreasonable manner when no officer of reasonable competence could have made the same choice in similar circumstances.") (quotation omitted).

■ Because qualified immunity is designed to protect police officers from liability

---

**7.** Specifically, Plaintiff's proposed jury instructions on the excessive force claim were:

> 2. With respect to plaintiff's *Excessive Force* claim, we, the jury, find the defendant:
>
> Liable_____ Not Liable_____
>
> 2A. Is the defendant entitled to Qualified Immunity on the Excessive Force claim?
>
> [YOU NEED ONLY ANSWER QUESTION # 2A IF YOU ANSWERED "LIABLE" TO QUESTION # 2; IF YOU ANSWERED "NOT LIABLE" GO TO [THE NEXT QUESTION]].
>
> Yes_____ No_____

Pl. Proposed Special Verdict Form, at 1–2 (Docket No. 21) (emphasis and capitalization in original).

and suit when their actions are objectively reasonable, courts are instructed to "resolve questions of reasonableness on summary judgment ... *where the material facts are not in dispute....*" *Lennon v. Miller,* 66 F.3d 416, 421 (2d Cir.1995) (emphasis added); *see also Hunter v. Bryant,* 502 U.S. 224, 227–28, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991); *Roy v. Inhabitants of the City of Lewiston,* 42 F.3d 691, 694 (1st Cir.1994); *Oliveira,* 23 F.3d at 649. Thus, in cases where the facts underlying the availability of the defense are undisputed, a court may properly decide the qualified immunity issue. However, if determining the objective reasonableness of the police officer's conduct requires further fact finding, it is appropriate to submit the issue of qualified immunity to the jury. *See Lennon,* 66 F.3d at 421; *Oliveira,* 23 F.3d at 649; *Calamia v. City of New York,* 879 F.2d 1025, 1036 (2d Cir.1989). Here, because neither party moved for summary judgment on the qualified immunity issue prior to trial, the issue could not be decided prior to trial. *See McCoy v. Hernandez,* 203 F.3d 371, at 375–76 (5th Cir.2000) ("[I]f the issue [of qualified immunity] is not decided until trial the defense goes to the jury which must then determine the objective legal reasonableness of the officers' conduct."); *Snyder,* 142 F.3d at 799 ("[I]f ... there remain disputed issues of material fact relative to immunity, the jury, properly instructed, may decide the question.") (internal quotation and citation omitted); *Lee,* 136 F.3d at 101. Thus, this was not a situation where a defendant was improperly required to go to trial because the district court erroneously decided the issue of qualified immunity on motion prior to trial. *See, e.g., Pahuta v. Massey–Ferguson, Inc.,* 170 F.3d 125, 132 n. 4 (2d Cir.1999); *In re State Police Litig.,* 88 F.3d 111, 124 (2d Cir.1996).

■ Plaintiff's contention that the jury's finding that Wilburn used excessive force renders the facts concerning the qualified immunity issue undisputed and, thus, a matter for the Court to decide, *see* Pl. Mem. of Law at 2, misconceives the *separate* "reasonableness" inquiries a jury may be required to make in cases where a plaintiff brings an excessive force claim. *See, e.g., Roy,* 42 F.3d at 694. In *Lennon,* the Second Circuit clari-

fied the distinction between the "correctness" of the defendant's conduct, i.e., the question of liability, and the "objective reasonableness" of the defendant's conduct based on what a reasonable police officer would have done under similar circumstances, i.e., the question of qualified immunity:

> Disputes over reasonableness are usually fact questions for juries. However, in qualified immunity cases, we are not concerned with the correctness of the defendants' conduct, but rather the "objective reasonableness" of their chosen course of action given the circumstances confronting them at the scene. With this concern in mind, we have held that when *"the factual record is not in serious dispute* ... [,][t]he ultimate legal determination whether ... a reasonable police officer should have known he acted unlawfully is a question of law better left for the court to decide."

66 F.3d at 421 (emphasis added) (quoting *Warren v. Dwyer,* 906 F.2d 70, 76 (2d Cir.), *cert. denied,* 498 U.S. 967, 111 S.Ct. 431, 112 L.Ed.2d 414 (1990)).

This distinction is recognized by other circuit courts that have addressed issues relating to liability and qualified immunity in the context of section 1983 claims. *See Snyder,* 142 F.3d at 800–01; *Roy,* 42 F.3d at 694 ("The Supreme Court has instructed that the Fourth Amendment's search and seizure provisions control and that the use of deadly force incident to arrest depends solely on whether the officer's conduct was 'objectively reasonable.' Further, the Court has adopted a qualified immunity test for section 1983 actions that shields a 'reasonable officer' judged by an objective standard.") (citing *Graham v. Connor,* 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)); *Oliveira,* 23 F.3d at 648–49. This point was highlighted by the Second Circuit in *Oliveira:*

> It is not surprising that the District Court, after ruling as à matter of law that the officers' conduct was unlawful, also ruled as a matter of law that it was objectively unreasonable for the officers to believe that their conduct was lawful. At first

blush, the two rulings appear to involve the same question—whether the officers' conduct was objectively reasonable.... Nevertheless, we have been authoritatively instructed that the objective reasonableness component of the inquiry as to lawfulness is not the same as the objective reasonableness component of the inquiry as to qualified immunity.... The result of the distinction between reasonableness as a component of a Fourth Amendment violation and reasonableness as a component of an immunity defense is that an officer is protected in some circumstances even when he mistakenly conclude[s] that probable cause is present, i.e., when he reasonably believes that a reasonably prudent police officer would have acted even though a reasonably prudent police officer would not have acted.

23 F.3d at 648–49 (internal quotations and citations omitted). More recently, the Fifth Circuit in *Snyder* addressed this issue where the jury decided the issues of liability and qualified immunity in the affirmative:

The jury decided both that [defendant] used excessive force, thereby depriving [plaintiff] of his constitutional rights, and that [defendant] had a reasonable belief that his actions would not violate [plaintiff's] constitutional rights.... There is no inherent conflict between a finding of excessive force and a finding of qualified immunity.... [I]t might be possible for the jury to resolve factual ambiguities so as to conclude that a constitutional violation took place, even though it is not possible for the jury to resolve factual ambiguities so as to conclude that the violation was the product of an objectively unreasonable mistake.[8]

142 F.3d at 800 (internal quotations and citations omitted).[9] In its charge, the Court instructed the jury on the distinction between liability and qualified immunity and detailed standards that the jury should use when evaluating the applicability of qualified immunity to the instant case:

Even if you find that the defendant violated the plaintiff's right against ... excessive force, the defendant still, however, may not be liable to the plaintiff. This is so because the defendant may be entitled to qualified immunity....

A defendant will be entitled to qualified immunity if you find that, at the time ... the defendant used excessive force to effect plaintiff's arrest ... the defendant neither knew nor should have known that his actions were contrary to federal law.... The defendant is entitled to qualified immunity only if he did not know what he did was in violation of federal law *and* if a competent public official could not have been expected at the time to know that the conduct, if committed, was in violation of federal law.

In deciding what a competent official would have known about the legality of the defendant's conduct, you may consider the nature of the defendant's official duties, the character of his official position, the information which was known to him, or not known to him, and the events which confronted him. For example, with respect to plaintiff's excessive force claim, if you find that plaintiff's injuries were inflicted *after* he had been subdued by the defendant, then the qualified immunity defense would not apply, since no reasonable police officer could believe that the application of excessive force was legal under these circumstances. You must ask yourself what a reasonable official in the defendant's situation would have believed about the legality of the defendant's conduct. Defendant's conduct must be judged based

---

**8.** The Court notes that because Plaintiff does not base his motion for a new trial on any perceived inconsistency between the jury's determinations on liability and qualified immunity with respect to Plaintiff's excessive force claim, *see* Pl. Mem. of Law at 1–6, the Court need not reach this issue.

**9.** The *Snyder* court recognized that there is disagreement amongst the circuit courts on the issue of whether a finding of excessive force precludes a finding of excessive force. *See Snyder*, 142 F.3d at 801 n. 10. As previously noted, in *Oliveira*, the Second Circuit noted the separate reasonableness inquiries governing the questions of liability and qualified immunity when a police officer's conduct is at issue. *See Oliveira*, 23 F.3d at 648–49.

on the objective reasonableness standard of a properly trained police officer. You should not consider what the defendant's subjective intent was, even if you believe it was to harm the plaintiff. You must also use your common sense.. If you find that a reasonable official in the defendant's situation would believe his conduct to be lawful, then this element will be satisfied.

February 1, 2000 Transcript of Proceedings, at 41–43 (excerpt of Jury Instructions).

With the reasonableness inquiries with respect to liability and qualified immunity separated, "the question remains whether the immunity issue required decision by the jury." *Oliveira*, 23 F.3d at 649.

In the instant case, the parties dispute material facts that directly implicate the reasonableness of Officer Wilburn's use of force at the time he arrested Plaintiff. *See, e.g., Thomas v. Roach*, 165 F.3d 137, 144 (2d Cir.1999), *Oliveira*, 23 F.3d at 650. Indeed, the trial before this Court revealed significant factual disputes "concerning various aspects of the encounter" between Officer Wilburn and Plaintiff Wright. *Oliveira*, 23 F.3d at 650. Specifically, there was conflicting testimony with respect to, *inter alia*, Defendant's attempts to subdue Plaintiff prior to using pepper spray; Plaintiff's attempts to resist arrest; and the degree of danger present during the encounter. A careful review of the testimony demonstrates the parties' differing versions of the events and circumstances of Plaintiff's arrest.

Plaintiff argues, in conclusory fashion, that "even accepting Trooper Wilburn's testimony ... [Defendant] has simply put forth no facts to support that a reasonable police officer would have thought the use of excessive force on Wright was legal." Affidavit of Evan M. Foulke, Esq., at ¶ 6. To support this conclusion, Plaintiff selectively recites (absent a copy of the trial transcript) portions of Defendant's testimony. Under Plaintiff's ver-

sion of Defendant's testimony, Officer Wilburn testified, *inter alia*, that he did not attempt to grab Wright's wrist prior to pepper spraying him; Defendant was out of danger and no longer in front of the truck which was allegedly used to strike him; and that Plaintiff did not try to physically assault Defendant once he reached the side of the truck. *See id.* at ¶ 7. Defendant, however, disputes Plaintiff's characterization of his testimony and offers a very different account of the events concerning Plaintiff's arrest. *See* Def. Mem. of Law at 3, 22. Specifically, Defendant contends that:

> [W]hile he was at the Wright residence on May 15, 1996 to keep the peace during a personal property retrieval, plaintiff drove his truck toward [Officer] Wilburn in a threatening manner despite several orders by defendant that plaintiff stop.... Defendant informed plaintiff that he was under arrest, and directed plaintiff to exit his truck. When plaintiff refused, Trooper Wilburn attempted to grab plaintiff's wrist to forcibly remove him from the vehicle; however, plaintiff pulled his hand away and held tightly to the steering wheel. [Defendant] then took hold of plaintiff's arm and tried to pull his hand free from the steering wheel but could not budge it; plaintiff was way too strong. Defendant, realizing that plaintiff—a much larger man—was stronger that he and that any attempt to climb into the cab to physically remove [Plaintiff] was potentially dangerous, especially since [Plaintiff] was carrying a gun, sprayed him with pepper spray, after first giving plaintiff ample warning. Defendant ... believed at the time that using the pepper spray was the most benign alternative in bringing the incident to a conclusion without injury. Plaintiff and his witnesses testified that defendant also sprayed plaintiff after he had already been handcuffed and subdued, a charge that defendant denied.[10]

10. On this point, the Court specifically instructed the jury that, "[W]ith respect to plaintiff's excessive force claim, if you find that plaintiff's injuries were inflicted *after* he had been subdued by the defendant, then the qualified immunity defense would not apply, since no reasonable police officer could believe that the application of excessive force was legal under those circumstances." February 1, 2000 Transcript of Proceedings, at 42–43. Accordingly, the jury's determination that a reasonable police officer in Defendant's position and under similar circumstances would have believed his conduct was

Def. Mem. of Law, at 3 (citing ~~testimony of~~ Defendant Wilburn in January 21, 2000 Transcript of Proceedings at 7–12, 30–33).

Because these disputes "bear directly upon whether it was objectively reasonable" for Defendant to believe that he was acting lawfully, *Oliveira*, 23 F.3d at 650, it was appropriate for the Court to have the jury resolve these factual disputes. Accordingly, Plaintiff's motion for a new trial on this ground is denied.

### D. Plaintiff's Waiver of Judgment as a Matter of Law on the Qualified Immunity Issue

Although in his Notice of Motion Plaintiff does not move, pursuant to FED. R. CIV. P. 50(b) for judgment as a matter of law on the issue of qualified immunity, Plaintiff nonetheless makes this argument in his Memorandum of Law. *See* Pl. Mem. of Law at 5–6. In response, Defendant advances two grounds for denying Plaintiff's relief: (1) Plaintiff waived this argument because he failed to object to the Court's charge on qualified immunity before the jury was discharged; and (2) qualified immunity was properly determined in favor of Defendant. *See* Def. Mem. of Law at 20–24. Because Defendant addressed Plaintiff's request for judgment as a matter of law on the issue of qualified immunity, the Court, in fairness to plaintiff, will liberally construe Plaintiff's motion as seeking that relief.

▋ "A motion for judgment as a matter of law may ... be made after judgment, but only if such a motion has also been made prior to submission of the case to the jury." *Piesco v. Koch*, 12 F.3d 332, 340 (2d Cir.1993); *see also Pittman by Pittman v. Grayson*, 149 F.3d 111, 120 (2d Cir.1998), *cert. denied,* —— U.S. ——, 120 S.Ct. 59, 145 L.Ed.2d 51 (1999). Similarly, "although a motion for [judgment as a matter of law] may be 'renew[ed]' after the jury returns its verdict ... it may be renewed only on grounds that were specifically articulated before submission of the case to the jury." *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 164 (2d Cir.1998) (citations omitted). Accordingly,

legal tends to reject Plaintiff's version of the

[t]he posttrial motion is limited to those grounds that were specifically raised in the prior motion for [judgment as a matter of law]'; the movant is not permitted to add new grounds after trial." *Galdieri–Ambrosini v. National Realty & Dev. Corp.*, 136 F.3d 276, 286 (2d Cir.1998) (quoting *McCardle v. Haddad*, 131 F.3d 43, 51 (2d Cir.1997) ("In sum, a posttrial motion for [judgment as a matter of law] can properly be made only if, and to the extent that, such a motion specifying the same grounds was made prior to the submission of the case to the jury.")).

▋ In the present case, Plaintiff never sought judgment as a matter of law on the qualified immunity issue—or any other issue—at any stage of the trial proceedings. Significantly, this point is not disputed by plaintiff in his moving papers. Accordingly, Plaintiff's motion for judgment as a matter of law on the issue of qualified immunity for the excessive force claim must be denied. The Court further notes that this is not an instance where the court "may overlook such a default in order to 'prevent a manifest injustice in cases [w]here a jury's verdict is wholly without legal support.'" *Pahuta*, 170 F.3d at 129 (citations and internal quotations omitted); *see also Galdieri–Ambrosini*, 136 F.3d at 287 (citation and quotation omitted). Indeed, Plaintiff does not claim, nor does the record reflect, a basis for a claim of such manifest injustice. Accordingly, the Court declines to upset the jury's determination that Officer Wilburn was entitled to qualified immunity. Moreover, after carefully reviewing the testimony and other evidence presented to the Court at trial, the Court independently finds that, because reasonable officers would disagree about the legality of the Defendant's conduct under the circumstances of this case, it was objectively reasonable for Defendant to believe his actions were legal and, thus, Defendant was entitled to qualified immunity with respect to Plaintiff's excessive force claim. *See, e.g., Lennon*, 66 F.3d at 421; *Oliveira*, 23 F.3d at 650.

### III. CONCLUSION

For the reasons stated above, Plaintiff's motions for a partial new trial pursuant to

events on this point.

FED. R. CIV. P. 59 and judgment as a matter of law pursuant to FED. R. CIV. P. 50 are **DENIED.**

**IT IS SO ORDERED.**