James GILES, Plaintiff,

v.

Marty RHODES, Correction Officer, and N. Kitchen, Correction Officer, Defendants.

No. 94 CIV. 6385(CSH).

United States District Court, S.D. New York.

April 26, 2001.

Jeffrey Louis Friesen, Cravath Swaine & Moore, New York City, for plaintiff.

Lisa R. Dell, Robert Abrams, Attorney General, New York City, Michael Oliver Hueston, Dennis C. Vacco, Attorney General, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

HAIGHT, Senior District Judge.

Plaintiff brought this action under 42 U.S.C. § 1983 seeking compensation for injuries he claims he sustained from the defendants' use of excessive force against him on July 23, 1991, while plaintiff was an inmate at Sing Sing prison. Following a jury verdict in the defendants' favor, plaintiff moves for judgment as a matter of law ("JMOL") pursuant to Fed.R.Civ.P. 50(b) or, alternatively, for a new trial pursuant to Fed.R.Civ.P. 59(a). For the reasons that follow, the motion is denied in its entirety.

## DISCUSSION

The Court described the factual background of this case in its prior opinion resolving *in limine* matters, *Giles v. Rhodes*, 2000 WL 1425046 (S.D.N.Y. Sept.27, 2000), familiarity with which is assumed. The facts will be repeated only to the extent necessary for an understanding of the resolution of this motion.

Plaintiff moves for a JMOL or a new trial on the ground that the medical evidence—including the prison medical records, the testimony of the treating nurse and the testimony of plaintiff's medical expert—overwhelmingly demonstrates that plaintiff's injuries were caused by a beating, not by a routine take-down as defendants contend. Based on this evidence, plaintiff argues that no reasonable juror could have found for the defendants. Defendants oppose the motion on its merits and also on two procedural grounds: (1) the motion was not timely filed, and (2) plaintiff's failure to move for a JMOL at the close of evidence bars his Rule 50(b) motion.

### 1. *Timeliness*

By their express terms, motions made pursuant to Rules 50(b) and 59(a) must be filed no later than ten days after entry of the judgment in the case. This deadline is jurisdictional; courts are entirely without power to extend it. *See, e.g., Weissman v. Dawn Joy Fashions, Inc.*, 214 F.3d 224, 230 (2d Cir.2000). In this case, defendants' contention that the motion was filed beyond the ten-day jurisdictional limit is unfounded. Defendants assert, without citation to the record, that the judgment was entered on the docket on October 18, 2000. If it were entered on that date, the plaintiff's motion filed on November 1, 2000 would have been one day late. Plaintiffs, however, have submitted a photocopy of the actual judgment

which contains a stamp reciting that "This document was entered on the docket on 10/19/00." Using this latter date as the entry date, which the Court has no reason to doubt, and the computation guidelines set forth in Fed.R.Civ.P. 6(a). I conclude that plaintiff filed his motion on the tenth day after entry of the judgment and it was therefore timely.

### 2. *Waiver of Rule 50(b) Motion*

██ Rule 50(b) provides in substance that a "movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment—and may alternatively request a new trial or join a motion for a new trial under Rule 59." In the Rule 50(b) context, the verb "renew" is critical. It indicates that a JMOL made during trial is a prerequisite to a post-trial Rule 50(b) motion. Indeed, "[t]he rule is firmly entrenched that only parties who have moved for a directed verdict may seek the benefit of a judgment n.o.v." [1] *Oliveras v. American Export Isbrandtsen Lines, Inc.*, 431 F.2d 814, 816 (2d Cir.1970). The purpose of this rule is

> to avoid making a trap of the latter motion. At the time that the motion for directed verdict is permitted, it remains possible for the party against whom the motion is directed to cure the defects in proof that might otherwise preclude him from taking the case to the jury. A motion for judgment n.o.v., without prior notice of alleged deficiencies of proof, comes too late for the possibility of cure except by way of a complete new trial.

*Id.* (quoting 5 Moore, *Federal Practice* ¶ 50.08 at 2359). In keeping with this rationale, parties must state the precise grounds for the directed verdict during trial and may only move for relief under 50(b) based on the same grounds. *See* Fed.R.Civ.P. 50, 1991 Advisory Committee Notes, Subdivision (b) ("A post-trial motion for judgment can be granted only on grounds advanced in the pre-verdict motion."); *Cruz v. Local Union Number 3 of the Int'l Bhd. Of Elec. Workers*, 34 F.3d 1148, 1155 (2d Cir.1994) ("judgment as a matter of law is limited to those issues specifically raised in [a] prior motion for a directed verdict") (internal quotations omitted; alteration in *Cruz* ); *Wright v. Wilburn*, 194 F.R.D. 54, 63 (N.D.N.Y.2000) ("[t]he posttrial motion is limited to those grounds that were specifically raised in the prior motion for [judgment as a matter of law]; the movant is not permitted to add new grounds after trial.") (internal quotations omitted; alterations in *Wright* ).

██ It is common ground that the plaintiff at bar failed to move for a JMOL at any time during the trial. It necessarily follows that he is foreclosed from seeking post-trial relief under Rule 50(b). *See Walling v. Holman*, 858 F.2d 79, 82 (2d Cir.1988) ("Appellants are precluded from challenging the sufficiency of the evidence because they failed to move for a directed verdict at trial in accordance with Fed. R.Civ.P. 50(b)."); *Wright*, 194 F.R.D. at 63 (denying plaintiff's motion for JMOL because he failed to seek JMOL "at any stage of the trial proceedings"). Where a party has failed to move for a directed verdict during the trial, the procedural bar may be relaxed only "in order to prevent a manifest injustice in cases [w]here a jury's verdict is wholly without legal support." *Pahuta v. Massey–Ferguson, Inc.*, 170

---

1. The terms "directed verdict" and "judgment n.o.v." were those formerly used by Rule 50 to indicate the forms of relief sought under that rule during trial and after trial, respectively. The 1991 amendments to Rule 50 replaced both phrases with the term "judgment as a matter of law" which is the term presently used.

F.3d 125, 129 (2d Cir.1999) (internal quotations omitted; alteration in *Pahuta* ).

■ Plaintiff argues that he is not precluded from making a Rule 50(b) motion because after the jury rendered its verdict the Court informed him that he had ten days from entry of the judgment to file a Rule 50 motion. Plaintiff contends that because defendants did not object to the prospect of his filing such a motion at that time "it was agreed" that he retained the right to do so. Plaintiff's Reply Brief at 2.

This contention is devoid of merit. Plaintiff cites no authority for the proposition that the pre-verdict JMOL condition precedent to Rule 50(b) can be waived by the Court or the opposing party. Nor, even if possible, did that occur here. The Court did not give plaintiff permission to file a Rule 50(b) motion or sanction a procedural waiver. In an abundance of caution, it simply reminded plaintiff of Rule 50's ten-day jurisdictional limit. As the Court advised:

> I think it's fair although I do not think that the able and excellent counsel for the plaintiff require any instruction from me on the point, but I would simply point out, because there have been some recent Court of Appeals cases on the point, that the time limits specified in Rule 50 for the making of a motion for a judgment as a matter of law are jurisdictional in nature.
>
> You must read the rule for yourself, but my recollection of it is that such a motion must be made within ten days of the entry of the judgment, and I cannot extend that time. . . . The ten-day period begins to run from the docketing of the judgment. . . . I just think it's fair, in view of some recent Court of Appeals decisions, to call your particular atten-

tion to the jurisdictional requirements of Rule 50.

Trial Transcript ("Tr.") at 512–13.

As this excerpt reveals, the Court's comments were intended only to focus the plaintiff's attention on the temporal jurisdictional limitations of Rule 50, not to fashion some sort of exception to that rule's pre-requisite. The Court's sole purpose was to remind plaintiff's counsel of the procedural time limits for making a Rule 50(b) motion, since those limits are jurisdictional in nature. The Court's comments cannot reasonably be read to relieve plaintiff from a pre-requisite for making a motion; nor would the Court have the authority to do so, given the Advisory Committee's description of the pre-requisite's effect and the case law enforcing it.

### 3. *Rule 59(a) Motion for a New Trial*

■ The Court's denial of plaintiff's Rule 50(b) motion is not dispositive of his companion Rule 59(a) motion because plaintiff's failure to make a motion for a JMOL at the close of evidence has no adverse affect on his motion for a new trial. Rule 59(a) provides that "[a] new trial may be granted to all or any of the parties and on all or part of the issues . . . for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States". The rule contains no pre-requisite to such relief. *See Neely v. American Family Mutual Ins. Co.*, 930 F.Supp. 360, 368 (N.D.Iowa 1996) ("[A] party who either fails to move for judgment as a matter of law on any claim at the conclusion of the evidence or fails to renew at that time a motion for judgment as a matter of law made earlier than the close of the evidence has waived a post-trial motion for judgment as a matter of law pursuant to Rule 50(b), and instead must seek relief in a motion for new trial pursuant to Fed.

R.Civ.P. 59."), *aff'd,* 123 F.3d 1127 (8th Cir.1997); *Baker v. Advanced Mixer, Inc.,* No. 92 Civ. 3365, 1994 WL 178106, *4 (E.D.Pa. May 5, 1994) ("A party may request a new trial under Rule 59 even if the party failed to move for judgment as a matter of law at the close of all the evidence."). Accordingly, I may consider plaintiff's claim that he deserves a new trial under Rule 59(a) because the verdict is against the weight of the evidence.

■ With regard to the standards governing such relief, the Second Circuit has instructed that:

As a general matter, a motion for a new trial should be granted when, in the opinion of the district court, the jury has reached a seriously erroneous result or the verdict is a miscarriage of justice. A new trial may be granted, therefore, when the jury's verdict is against the weight of the evidence. The standards governing a district court's consideration of a Rule 59 motion for a new trial on the grounds that the verdict was against the weight of the evidence differs [sic] in two significant ways from the standards governing a Rule 50 motion for judgment as a matter of law. Unlike judgment as a matter of law, a new trial may be granted even if there is substantial evidence supporting the jury's verdict. Moreover, a trial judge is free to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner. *A court considering a Rule 59 motion for a new trial must bear in mind, however, that the court should only grant such a motion when the jury's verdict is egregious. Accordingly, a court should rarely disturb a jury's evaluation of a witness's credibility.*

*DLC Management Corp. v. Town of Hyde Park,* 163 F.3d 124, 133–34 (2d Cir.1998) (internal quotations and citations omitted; emphasis added). The moving party, in this case plaintiff, bears the burden of demonstrating his entitlement to a new trial. *Maguire Company, Inc. v. Herbert Construction Company, Inc.,* 945 F.Supp. 72, 74 (S.D.N.Y.1996).

■ Plaintiff argues that the jury's verdict for the defendants flies in the face of the great weight of the evidence presented because the medical evidence showed that Giles' injuries could only have been caused by a beating. This evidence consisted of the "objective" prison medical records and the testimony of the treating nurse, Nurse Fell, which unequivocally showed that plaintiff had been injured, and the unrebutted testimony of the plaintiff's expert forensic pathologist, Dr. Isidore Mihalakis, who opined that plaintiff's injuries were consistent not with a routine takedown, as defendants claimed, but with a beating. In plaintiff's view, no reasonable juror could have found that the defendants did not use excessive force because the medical evidence overwhelmingly demonstrates that plaintiff was beaten, and there was no evidence that such a beating could have been inflicted by anyone other than the defendants.[2]

Although he readily acknowledges that the evidence also included the parties' conflicting testimony about what occurred in the 7–Building Bypass, plaintiff contends that a finding that the verdict goes against the weight of the evidence would not require the Court to credit the plaintiff's version of the incident over the defendants'. In so doing, plaintiff implicitly acknowledges, as he must, that credibility determinations are matters particularly within the province of the jury. *See* Plain-

---

2. Defendants do not dispute that a beating rather than a routine takedown would have consisted of the use of excessive force in violation of plaintiff's civil rights.

tiff's Brief at 1 ("If [the parties' testimony] were the only evidence, then the trial would have simply been a credibility contest. However, it was *not* the only evidence.").

Plaintiff's reasoning is flawed. Even assuming *arguendo* the medical evidence concerning Giles' injuries did not itself implicate any credibility issues, a decision by this Court that the verdict is against the weight of the evidence *would* require me to credit the plaintiff's testimony over the defendants'. This is because acceptance of Dr. Mihalakis's testimony that the documented injuries were consistent with a beating, and a finding for plaintiff, necessarily require a concomitant acceptance of the plaintiff's contention that they beat him and rejection of the defendants' contention that they did not.

While a trial judge may evaluate credibility on a motion for a new trial, the Second Circuit admonishes courts not to disturb lightly a jury's credibility determinations. *See DLC Management,* 163 F.3d at 134 ("a court should rarely disturb a jury's evaluation of a witness's credibility"); *United States v. Landau,* 155 F.3d 93, 105 (2d Cir.1998) ("[a] jury's credibility assessments are entitled to deference"); *Metromedia Co. v. Fugazy,* 983 F.2d 350, 363 (2d Cir.1992) ("Where the resolution of issues depended on assessment of the credibility of the witnesses, it is proper for the court to refrain from setting aside the verdict and granting a new trial."). It is obvious from the jury's verdict that they credited the defendants' testimony over the plaintiff's and that its verdict turned substantially or entirely on the evaluation of the parties' credibility. The defendants' own testimony was the major piece of evidence in their favor—there were no witnesses who saw the incident and the defendants did not have a medical expert to testify to the cause of plaintiff's injuries.

Having reviewed the defendants' testimony, I find that it is not inherently implausible, and I am not convinced that a miscarriage of justice would result if I failed to grant a new trial. *Cf. Ricciuti v. New York City Transit Authority,* 70 F.Supp.2d 300, 308 (S.D.N.Y.1999) ("A trial judge should be least inclined to disturb a jury's verdict, based entirely or primarily upon witness credibility, where the conflicting accounts of the witnesses are equally plausible (or implausible), and there is no independent evidence in the trial record clearly demonstrating that, if a miscarriage of justice is to be avoided, one party's witnesses should not be believed. In these circumstances, the trial judge should accept the jury's findings regardless of any doubts of his own in the matter.")

In the case at bar, plaintiff Giles purports to find in the medical proof "independent evidence in the trial record clearly demonstrating that, if a miscarriage of justice is to be avoided, one party's witnesses should not be believed." Plaintiff relies principally upon the expert opinion testimony of Dr. Mihalakis, which plaintiff accurately states was not rebutted by a contrary opinion voiced by a medical expert called by defendants.

In order to discharge my responsibilities under Rule 59, I have read and carefully considered Dr. Mihalakis's trial testimony on direct, cross, re-direct, and re-cross examination. Before analyzing that testimony, it is necessary to make a preliminary observation.

█ The fact that defendants did not rebut Dr. Mihalakis's opinion with a medical expert of their own did not immunize the Mihalakis testimony from the jury's evaluation of whether it was credible. On the contrary: it is well established that a lay jury can refuse to credit an expert's opinion, even if another expert was not called to rebut it. *See, e.g., Powers v.*

*Bayliner Marine Corp.*, 83 F.3d 789, 798 (6th Cir.1996) (jury's rejection of expert witness's unrebutted testimony would not require new trial because the jury "could have rejected [it] even if contradicted.").

That reality reflects the jury's traditional power to accept or reject the testimony of any witness, lay or expert. Trial judges routinely instruct juries on that power. In the case at bar, on the basis of his impressive professional qualifications I qualified Dr. Mihalakis "as an expert witness in the field of forensic pathology," Tr. at 85, but having done so, I said at once to the jury:

> You should understand, however, that simply because I have qualified this witness to testify as an expert and give you his opinions, that does not mean that I stamp with my own personal seal of approval whatever opinions he may give you.
>
> It is for you to decide whether or not the opinions given by this witness assist you in your important function of resolving the factual disputes of this case.
>
> So it is under that rule [Rule 702, Fed.R.Evid., read to the jury] that I qualify this witness as an expert witness, and then you may derive such assistance from his opinions as you think right.

Tr. at 86.

To that preliminary instruction, counsel for plaintiff made no objection; nor did they object to the language I included in my charge at the end of the case:

> You should not accept the opinion of an expert witness uncritically, as if it were Holy Writ. You should consider the expert opinion received in evidence in this case, and give it such weight as you think it deserves. If you should decide that the opinion of the expert witness is not based upon sufficient education or experience, or if you should conclude that the reasons given in support of the opinion are not sound, or if you feel that

it is outweighed by other evidence, you may disregard the opinion entirely.

Tr. at 468–69.

In the light of these familiar principles, I consider whether the jury's evident rejection of Dr. Mihalakis's opinion (that plaintiff's injuries were caused by a systematic beating and not by a routine takedown to restore order) led to a miscarriage of justice. I turn now to an analysis of the Mihalakis testimony.

In forming his opinion, Dr. Mihalakis relied primarily upon the contemporaneous descriptions of plaintiff's injuries contained in the medical records generated by the medical staff at the Sing Sing infirmary immediately following the events in suit. *See* Tr. at 87 ("primarily I relied on the medical information furnished me with respect to Mr. Giles having been seen in the emergency room or infirmary, what have you, of Sing Sing."). Those records recited observations of a number of "bruises," "abrasions," "discolored areas," "contusions," and "raised areas" on plaintiff's face, back, arms, scalp, and knees. Dr. Mihalakis testified that these recorded, objective observations were "consistent with a beating" because of their location and particular characteristics. For example, with respect to the entry of "left back, two bruises," Dr. Mihalakis reasoned that the bruises were "in a protected area," that is, "protected by the shoulder blade and the buttock, and if one were to fall, the injury would be in the buttock or in the shoulder blade or somewhere along there. But this is in the curvature of the back, and the curvature of the back is protected. So, if you have an injury there, it would be a separate impact injury, a punch, a kick, something along those lines." Tr. at 98–9. Mihalakis gave comparable testimony with respect to the other bruises, abrasions, and

conditions noted on the Sing Sing infirmary medical records.

These are probative opinions, expressed by a competent witness, and the jury would have been entitled in law to accept them. But the jury was also entitled to consider other aspects of Dr. Mihalakis's testimony, elicited during direct or cross-examination, which could have undermined his conclusion. I will consider some of that testimony.

On cross-examination, Dr. Mihalakis acknowledged, Tr. at 115–117, that he had never worked in a correctional facility; he did not know what training correctional officers received in the use of force; he did not know "how much force is permitted to control a potentially dangerous situation in a correctional facility" and was not familiar "with the techniques that officers are trained in and are permitted to use in state facilities," Tr. at 116; before forming his opinion, he did not examine plaintiff, or speak with him, or to any of the prison medical personnel who examined plaintiff, or to the correction officers involved.

In short, Dr. Mihalakis based his opinion principally upon the description of plaintiff's injuries in the medical records; but he also acknowledged on cross-examination that for forensic purposes those records were "lacking" because the noted injuries were not "exactly measured." Tr. at 121. In that regard, Dr. Mihalakis drew a distinction between clinical and forensic evaluations of medical records: "You know, we are a lot more exacting, but from a clinical standpoint it's not that terribly important. From a forensic standpoint, where you are trying to piece something together, it becomes more important, especially where you have pattern injuries." Tr. at 122–123. That distinction might very well have resonated with the jury, since Dr. Mihalak-

is was testifying as a forensic pathologist and the sole purpose of his opinions was "to piece something together," namely, the manner in which plaintiff's injuries were caused. To be sure, Dr. Mihalakis also testified on cross-examination that the particulars "lacking" in the medical records, while "important," were not "absolutely essential in coming to a conclusion... that this represents a beating, not an accidental type injury," Tr. at 123; nonetheless, the jury could reasonably have regarded Dr. Mihalakis's description of the records' forensic shortcomings as undermining the conclusion he drew from them.

There is an additional aspect of the Mihalakis testimony which is illustrated by what I have just quoted. The main thrust of Dr. Mihalakis's opinion was that of two possible causes for plaintiff's injuries, a "beating" was the more likely. But one must ask; more likely than *what?* In the testimony quoted above, Dr. Mihalakis described the alternative cause as "an accidental type injury." Elsewhere in his testimony he referred to the alternative cause as "a gentle fall," Tr. at 106; "in the general sense, falling down," Tr. at 108; and "an accidental fall" as opposed to "external force applied to this man," Tr. at 124.

The problem with this testimony is that on a scale from ten to zero, where ten represents knocking an inmate down and beating him, and zero echoes the Psalmist ("I will lay me down in peace, and take my rest")[3], Mihalakis's alternative cause is close to zero. But the trial evidence was that the corrections officers, confronting a recalcitrant Giles and smelling alcohol on his breath, "took him down" by the use of force that, by definition, had to be "external." The case for plaintiff was that the force used was excessive. Dr. Mihalakis's

3. Psalm 4:9 (as printed in the 1928 edition of the Book of Common Prayer).

opinion does not really support that theory if its main thrust is that these injuries would not have been caused by an "accidental fall"; no one contends that plaintiff tripped and fell accidentally. This aspect of Dr. Mihalakis's testimony may be explained by his unfamiliarity with the techniques correction officers are trained to use in controlling inmates in potentially dangerous situations.

Furthermore, Dr. Mihalakis acknowledged that at least some of plaintiff's injuries could have been caused during a routine take down:

Q. And you testified earlier that it's possible that the knee injury could have occurred when he was taken down, isn't that correct?

A. In the presence of squirming when he is down, the answer is yes, if he is face down.

Tr. at 145.

Having considered Dr. Mihalakis's testimony in its entirety, I conclude that there were sufficient reasons for the jury to reject his opinion as to causation. Accordingly that rejection cannot be said to have led to a miscarriage of justice.[4]

If one disregards Dr. Mihalakis's opinion, as the jury was entitled to do, the jury's resolution of the case must have turned upon an assessment of the parties' credibility concerning their two competing versions of the use of force. As noted above, I will give that evaluation proper deference because there is no basis on which to find that the credibility assessment led to an egregious result. The jury's verdict was one that could have reasonably been reached based on the evidence. Accordingly, because I conclude that the verdict was not against the weight of the evidence, I deny plaintiff's motion for a new trial.[5]

## CONCLUSION

As discussed above, I conclude that plaintiff's failure to move for judgment as

---

**4.** It is perfectly possible to imagine a case where independent and unrebutted medical evidence clearly establishes which of two conflicting factual accounts is true and which is false, so that a jury verdict inconsistent with that evidence would be vulnerable to a Rule 59 challenge. If an altercation between an inmate and a corrections officer broke out in an enclosed space, and the inmate claimed that the officer used excessive force by shooting him, and the officer denied that he shot the inmate, and the medical records generated at the prison infirmary shortly after the incident permitted an expert medical witness to testify at trial that the inmate had indeed been shot, and the defense did not rebut that medical evidence, a jury verdict rejecting the inmate's claim that the officer shot him would have an uncertain future under Rule 59. But that is not this case.

**5.** Even were I to conclude that plaintiff is not procedurally barred from making his 50(b) motion, that motion would fail for the same reasons I have rejected his Rule 59(a) motion based on the same grounds. Rule 50(b) motions for JMOL are evaluated under an even more stringent standard than Rule

59(a) motions. *See United States v. Landau,* 155 F.3d 93, 104 (2d Cir.1998). In evaluating a Rule 50(b) motion, the Court must view the evidence in the light most favorable to the nonmoving party, without weighing the credibility of the witnesses or the weight of the evidence, and determine whether "there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or ... such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [jurors] could not arrive at a verdict against him." *Samuels v. Air Transport Local 504,* 992 F.2d 12, 14 (2d Cir.1993) (internal quotations omitted; alteration and omission in *Samuels* ). Having failed to meet the more relaxed requirements of Rule 59(a), which allows me to consider credibility and the weight of the evidence and does not require me to view the evidence in the light most favorable to plaintiff, it is axiomatic that plaintiff cannot satisfy Rule 50(b)'s standards.

a matter of law at the close of evidence precludes my consideration of his present motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(b). As for plaintiff's Rule 59(a) motion for a new trial, I reject as unfounded defendants' argument that the motion was untimely, but deny the motion on the merits because plaintiff has not shown that the verdict was against the weight of the evidence.

It is SO ORDERED.